Ethel M. DAVIS, for Herself and for All
Others Similarly Situated, Plaintiff,

v.

Sam CALDWELL, in His Capacity as
Commissioner of Labor of the State
of Georgia, et al., Defendants.

Civ. A. No. 14973.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 24, 1971.

Motions to Alter or Amend
Nov. 24, 1971.

**374**

Steven Gottlieb, David A. Webster and Robert Dokson, Atlanta, Ga., for plaintiff.

Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendants Sands and Aetna.

Arthur K. Bolton, Atty. Gen., John W. Hinchey, Asst. Atty. Gen., Atlanta, Ga., for Sam Caldwell.

Carl C. Jones, Asst. Atty. Gen., Atlanta, Ga., for Georgia Board of Workmen's Compensation.

Before MORGAN, Circuit Judge, and MOYE and O'KELLEY, District Judges.

PER CURIAM:

Plaintiff Davis filed this suit on April 7, 1971, asking that a three-judge court be convened to hear the case, as required by 28 U.S.C. §§ 2281 and 2284. This three-judge court was convened, answers and briefs filed, an amendment to the complaint allowed, and a hearing held on June 18, 1971. The Court allowed post-hearing briefs filed, and the case is now submitted for decision.

## I. STATEMENT OF THE FACTS

Plaintiff Davis, a former employee of defendant Sands & Company of Georgia, Inc. [Sands], while on the job, ruptured a disc in her back on March 10, 1969. On June 18, 1969, she entered into an agreement for total disability payments in the amount of $40.80 per week with defendant Aetna Casualty & Surety Company [Aetna] the insurance carrier for Sands. On August 18, 1969, plaintiff returned to work for four days, whereupon her payments were terminated. A new agreement was entered effective August 22, 1969.

Aetna ceased paying benefits to plaintiff on January 29, 1971. On February 17, 1971, Aetna sent a letter to the Georgia Workmen's Compensation Board [the Board], requesting a hearing concerning an alleged change in plaintiff's condition. Because of the letter, a hearing was scheduled for April 8, 1971. On April 6, 1971, Aetna paid plaintiff for the period from January 30, 1971, to February 19, 1971. This suit was filed on April 7, 1971, and as a result the hearing was postponed. Finally, on June 7, 1971, the Board approved a lump sum settlement between Aetna and plaintiff in the amount of $8,000, which settlement relieved defendants Sands and Aetna of further liability to plaintiff.

The complaint attacks the Georgia Workmen's Compensation "scheme", and specifically Ga.Code Ann. § 114–703, § 114–709, and Rule 17 of the Board, attached hereto as Exhibit A. The Geor-

gia Workmen's Compensation "scheme" follows the general workmen's compensation structure in effect in most states. It covers all employees of employers above certain size limits, unless the employers elect not to be covered (with certain consequences). To pay any benefits required under the plan, employers must either take out insurance or qualify as self-insured. When an employee is injured, he receives benefits, based upon a formula, regardless of fault. In exchange for this no-fault recovery, the employee must forego his common law remedies. Upon injury the parties try to agree upon a settlement. If they cannot agree, the Board holds hearings, makes findings, and enters an "award", such as the one plaintiff received for her back injury. It is the laws and rules for termination of such an award which are attacked in this suit.

## II. JURISDICTION

Plaintiff brings this suit for herself, and, pursuant to Rule 23, Fed.R.Civ.P., for others similarly situated, that is, all persons eligible for workmen's compensation whose awards have been terminated, or are subject to termination, without a hearing. She asked that a three-judge court be convened to declare the two Georgia statutes and the Board's rule unconstitutional. Pursuant to that request and the policy in the Fifth Circuit, Jackson v. Choate, 404 F.2d 910 (5th Cir. 1968), a three-judge court was convened.

■ Defendants contend that the suit in reality attacks the Board's Rule 17, not the statutes, and for that reason the three-judge court was not properly convened, and should be adjourned to allow a single judge to hear the case.

The rule followed in this circuit, unless the case does not present a "substantial federal question", is that a three-judge court is convened to determine the question of three-judge jurisdiction. Jackson v. Choate, *supra*; Smith v. Ladner, 260 F.Supp. 918 (S.D.

Miss.1966) (three-judge court). Having reached that point, the complicated question of the proper appeal route seems to dictate that in the interest of certainty and judicial economy, the "three-judge court should fully dispose of all issues in the case before making any determination of either jurisdiction over, or the merits of, the alleged three-judge question." Comment, 20 J.Pub.L. 299, 310 (1971). That is the direction the Court will give the case, fully disposing of all issues in this Order.

In opposition to a three-judge court, defendants cite the case of Smith v. State Executive Committee, etc., 288 F. Supp. 371 (N.D.Ga.1968), for the proposition that if state statutes are not under serious challenge, but only regulations are challenged, three judges are not required to hear the case. In that case the regulations under attack were not any state-or-statute-sanctioned regulations, but rather were the regulations of a political party, and the Court found that this fact did not bring the case within the ambit of the "order made by an administrative board or commission acting under state statute" section of 28 U.S.C. § 2281. That case is easily distinguishable since the statutes are under serious challenge here as will appear below, and Rule 17 of the Board is made pursuant to Ga.Code Ann. § 114–703. It appears clearly here that not only is Rule 17 a state wide regulation, but that the Board was "functioning pursuant to a statewide policy and performing a state function," Moody v. Flowers, 387 U.S. 97, 102, 87 S.Ct. 1544, 1548, 18 L.Ed.2d 643 (1967), and that the three-judge court is properly convened. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970); Turner v. Fouche, 396 U.S. 346, n. 10, at 353, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). *See also*, Oklahoma Natural Gas Co. v. Russell, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659 (1923); Kelly v. Wyman, 294 F.Supp. 887 (S.D.N.Y.1968), aff'd, Goldberg v. Kelly, *supra*.

■■ Defendants also urge that this is a proper case for abstention to allow the state court to rule on the question presented here. Abstention would be proper only if the issue of state law were uncertain. Railroad Comm'n of Texas v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). In this case the state law is clear and certain, and a constitutional ruling is not premature. *See,* Barrett v. Atlantic Richfield Co., 444 F.2d 38 (5th Cir. 1971) (No. 29795, slip opinion dated May 17, 1971).

### III. MOTIONS TO DISMISS

Defendants Sands, Aetna, and Johnnie Caldwell all filed motions to dismiss. Sands' and Aetna's motions are based on mootness and upon lack of a jurisdictional amount.

■■ It is not necessary to allege a jurisdictional amount in a suit brought under 42 U.S.C. § 1983. Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). *See also,* Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970).

■ The mootness ground is based upon the fact that Aetna, on behalf of its insured, Sands, entered into a lump sum settlement with plaintiff, relieving them of "all liability for compensation and medical expenses under the Workmen's Compensation Act." That settlement satisfied all claims arising out of plaintiff's injury while in Sands' employ. Since plaintiff's claim against Sands and Aetna was individual, the motion of Sands and Aetna to dismiss the complaint as to them must be, and is, granted; that is, they are striken as defendants.

Mootness is not partial or unilateral, but applies to both parties to a suit. It is the issue which is moot, of course, not the parties. Thus if plaintiff's individual claim is moot, it follows that she can have no individual stake remaining in the case. Plaintiff Davis's individual claim is dismissed.

■ Defendants urge that if the individual action is mooted and dismissed, as the Court has done here, the class action must also be dismissed since there is no one left who will adequately and effectively represent the interests of the class. As a result of this lack of representation of the class, defendants assert, the Court is being asked to render an advisory opinion. Neither of these grounds takes into account the reason why the individual claim was mooted. It was mooted, quite simply, by defendant Aetna's paying the maximum lump sum settlement allowed by law. Defendants cannot be allowed to moot this case by the use of the "resist-and-withdraw" technique. United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); United States v. Oregon State Medical Society, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978 (1952); Cypress v. Newport News General & Nonsectarian Hospital Ass'n, 375 F.2d 648 (4th Cir. 1967); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968); Local 53 of the International Association of Heat and Frost Insulators and Asbestos Workers v. Vogler, 407 F.2d 1047 (5th Cir. 1969); Kelly v. Wyman, *supra.* Were this not so, a defendant's economic power would allow it to avoid decisions, such as the one sought here, by settling individual claims, regardless of the costs. Jenkins v. United Gas Corp., *supra.*

Plaintiff Davis, who has prosecuted the case with both vigor and skill, may continue as a class representative.

■ Defendant Caldwell's motion to dismiss, or that he be stricken as a defendant, is based upon the ground that he has no authority or control over the State Board of Workmen's Compensation. That agency is wholly independent of defendant Caldwell. Ga.Laws 1937, pp. 230, 235, 237; 1943, pp. 167, 169, 170 (Ga.Code Ann. § 54–113 et seq.; Ga. Code Ann. § 54–121); Ga.Laws 1920,

p. 202; 1931, pp. 7, 43 (Ga.Code Ann. § 114–715). The motion to strike Sam Caldwell as a defendant is granted.

## IV. THE CONSTITUTIONAL QUESTION

The class plaintiff represents is composed of all recipients of workmen's compensation whose benefits have been terminated without a hearing *prior to* any change-of-condition notice to the Board and those recipients whose benefits were terminated without a hearing *after* such notice to the Board. Thus the question is whether the Georgia Workmen's Compensation "scheme", that is, Ga.Code Ann. §§ 114–703 and 114–709, and Rule 17 of the Board, deprive plaintiff's class of due process by denying them a hearing prior to termination of benefits. The relief plaintiff seeks is for the Court to enjoin the termination of benefits without a hearing, and grant a declaratory judgment that the statutes and rule attacked are unconstitutional.

Plaintiff argues that "significant government benefits" may not be terminated without a prior hearing which comports with a minimum standard of due process. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *Cf.,* Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). *See also,* Davis v. Weir, 328 F.Supp. 317 (N.D.Ga.1971) (Opinion dated June 17, 1971).

Plaintiff has directed her attack against the Workmen's Compensation "scheme". In structuring that "scheme", the state set up a program of state-supervised benefits paid by employers, whether they were insured or self-insured. It was the choice of the legislature that the funds to pay benefits be privately, rather than publicly, administered. This "scheme" carries out the public policy, and the benefit is a "governmental benefit." *Compare,* workmen's compensation, *with* social security, unemployment compensation and welfare payments. It seems clear, also, that there is "state action" here such as will meet the requirements of 42 U.S.C. § 1983.

Even having found the benefit, it is necessary to determine if it is protected. While it may be a tautology to say that, if the Court requires protection of the interest, the interest is protected, such analysis is result oriented. The Court in *Goldberg* cited with approval Kelly v. Wyman, *supra,* the same case before the three-judge District Court, where the Court spoke of the "brutal need" of the welfare recipient, where such need was based upon the fact that absent the benefits the recipient would be driven to the wall. In actuality, a demonstration of a much less harsh result will suffice.

In Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970), and Caulder v. Durham Housing Authority, 433 F.2d 998 (4th Cir. 1970), the courts found eviction from public housing such a harsh deprivation as to deny due process if done prior to a hearing. In Wright v. Finch, 321 F.Supp. 383 (D.D.C.1971), and Doyle v. Finch, Pov.L.Rep. ¶ 12,160 (W.D.Tex.1970), the courts held that termination of disability insurance benefits under social security was so harsh as to require a hearing prior to termination. In Java v. Cal. Dept. of Human Resources, 317 F.Supp. 875 (N.D.Cal.1970) (three-judge court), aff'd on other grounds, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), and Crow v. Schultz, 325 F.Supp. 1314 (N.D. Cal.1970), the courts found that termination of unemployment compensation required a prior hearing because of the "serious injury" to the beneficiary.

It is hardly a leap at all to find here that the privation a recipient of workmen's compensation suffers if her benefits are terminated is protected. Termination to someone partially or wholly disabled by a job-related accident leaves him as fully dependent upon the

public purse for the "necessities of life" as does termination of welfare, unemployment, or disability payments. *Cf., Sniadach, supra.* It is hardly a persuasive argument to say, as did defendants, that the spouses of many recipients worked, therefore, mitigating their dire need. The actual facts belie such an explanation. The Court concludes that workmen's compensation benefits are benefits of such a nature that termination of those benefits is so harsh as to cause "serious injury" and should not be allowed without a prior hearing. Even so concluding, however, it is necessary to determine if there are "countervailing governmental interests in conserving fiscal and administrative resources." Goldberg v. Kelly, *supra.* *See also,* Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The only apparent governmental interest here is the conservation of the funds from which benefits are paid. That cost is ultimately borne by the consuming public in the form of higher prices, since any increase in benefit payments caused by continuation is reflected in the premiums employers must pay, or in employers' actual costs if they are self-insured.

Balanced against this interest is the dire need or "serious injury" which results from termination. The balance tips heavily toward requiring continuation until a hearing is held, particularly in light of the fact that all possible means to speed up the hearing lie peculiarly within the control of the state. The state can use personnel more skillfully in order to streamline procedures and reduce to a minimum the time from which a hearing is requested until the hearing is actually heard. *Cf.,* Goldberg v. Kelly, *supra,* at 266, 90 S.Ct. 1011.

Thus the Court must now examine the statutes and the rule in the light of the hearing requirement set forth herein.

Ga.Code Ann. § 114–703, in pertinent part, allows the Board to make rules. It is a normal delegation of legislative authority to an administrative agency that it be allowed to run its own affairs, and certainly that does not violate due process.

Ga.Code Ann. § 114–709 is the change-in-condition section. The last sentence reads: "No such review shall affect such awards as regards any moneys paid.", and it is this sentence which fatally flaws the section. What this sentence tells an insurance carrier or self-insured employer is that under no circumstances may it recoup any benefits paid. This has the insidious effect of inviting *ex parte* termination of benefits the moment a carrier or employer suspects a change in the recipient's condition which would increase the recipient's ability to work. In effect it warns the carrier or employer to "terminate now—litigate later", since the worst thing which can happen is an award of back pay retroactive to the date of termination.

Ga.Code Ann. § 114–709, as amended, is the change-in-condition section. The last sentence reads: "Such new award shall be effective as of the time the change in condition actually occurred as found by the board, notwithstanding the retroactive effect of such award, but shall not affect any compensation actually paid to any employee," and it is this sentence which fatally flaws the section. From those facts, it is clear beyond peradventure that the practice in the workmen's compensation field is immediate termination, with or without notice, upon the slightest suspicion of a change of condition.

Rule 17 suffers from the same fatal flaw, encouraging termination prior to hearing. *E. g.,* "An application for Hearing * * * automatically allows the insurance carrier to stop the payment of compensation until the question at issue has been adjudicated." It denies the protection of due process to award recipients and is unconstitutional.

■ To summarize, the Court finds that Ga.Code Ann. § 114–709 and Rule

17 of the Georgia Workmen's Compensation Board are unconstitutional on their face and in their application in that they invite and permit unilateral termination of previously adjudicated workmen's compensation benefits without a hearing as to the recipient's alleged change of condition.

The requesting judge, Charles A. Moye, Jr., as district judge, concurs in this opinion and judgment in all respects.

## EXHIBIT A

Georgia Code Annotated § 114–703

Rules; subpoenas, etc.; quorum.—(a) The State Board of Workmen's Compensation may make rules, not inconsistent with this Title, for carrying out the provisions of this Title.

\* \* \* \* \* \* \*

Georgia Code Annotated § 114–709

Review of award or settlement on motion of board or because of change in condition; award.—Upon their own motion before judicial determination or upon the application of any party in interest on the ground of a change in condition, the State Board of Workmen's Compensation may, not later than two years from the date that the board is notified that the final payment of a claim has been made pursuant to a board order, review any award or any settlement made between the parties and approved by the board and, on such review, may make an award ending, diminishing or increasing the compensation previously awarded or agreed upon, subject to the maximum or minimum provided in this Title, and shall immediately send to the parties a copy of the new award. The board shall have jurisdiction on such review to consider evidence of, and make a new award, determining events which occurred and conditions which existed at any time since the last hearing or agreement which resulted in an award for either party. Such new award shall be effective as of the time the change in condition actually occurred as found by the board, notwithstanding the retroactive effect of such award, but shall not affect any compensation actually paid to any employee.

\* \* \* \* \* \* \*

(Acts 1920, p. 191; 1931, pp. 7, 43; 1937, pp. 230, 233; 1937, pp. 528, 534; 1943, pp. 167–169; 1968, pp. 3, 7.)

Rule 17 Rules of the Georgia Workmen's Compensation Board

Discontinuance of compensation; application; hearing.—Compensation cannot be discontinued after an award has been made or an agreement between the parties approved until the full award has been paid. In case the award is made during disability, such disability is

presumed to last until the employee returns to work. However, in the event the insurance carrier or employer desires to stop payment of compensation, the insurance carrier or employer must file an application to discontinue the payment of compensation setting forth the reasons and serve notice upon the employee, or file an Application for Hearing with the Board. Upon the request to discontinue the payment of compensation, the Board may issue notice allowing the insurance carrier to stop payment of compensation and will place the case on the calendar for hearing if necessary. An Application for Hearing, except the application for a lump sum award, automatically allows the insurance carrier to stop the payment of compensation until the question at issue has been adjudicated. In the event application is made for hearing on the ground of a change of condition, the application must state specifically the nature and extent of the alleged change in condition. Every Approval of Agreement will be treated as an award.

Where a hearing has been set upon a request to show a change in condition and if there be medical questions involved, the movant shall introduce the medical evidence supporting such change in condition at the time of the hearing, either by testimony or deposition or any other way evidence may be introduced in trials of the superior courts of this State.