**UNITED STATES of America and Equal Employment Opportunity Commission, Plaintiffs,**

v.

**TRUCKING EMPLOYERS, INC., et al., Defendants.**

**Civ. A. No. 74–453.**

United States District Court,
District of Columbia,
Civil Division.

May 31, 1977.

Abner W. Sibal, Lubomyr M. Jachnycky, U. S. Dept. of Justice, Washington, D. C., for plaintiffs.

Edward C. Kaminski, Buckingham, Doolittle & Burroughs, Akron, Ohio, Edward F. Chuha, Kincaid, Plamer & Randall, Columbus, Ohio, for defendants.

MEMORANDUM AND ORDER

BRYANT, Chief Judge.

This is a defendant class action in which the United States and the Equal Employment Opportunity Commission allege that certain firms in the trucking industry engage in employment discrimination against blacks and Spanish-surnamed persons in violation of Executive Order No. 11246, 3 C.F.R. 339 (1964–1965 Comp.), *as amended,* 3 C.F.R. 173 (Jan. 1, 1973 Rev.); and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The gravamen of plaintiffs' complaint is that a pattern of discriminatory employment policies and practices exists in the trucking industry, running the gamut from hiring through assignment, transfer, promotion, and seniority. Since the relief plaintiffs seek is essentially equitable in nature, designed principally to remedy the alleged pattern of discrimination, the court has certified the defendant class under Rule 23(b)(2), Fed.R. Civ.P. The class includes "those common carriers of general commodity freight by motor vehicle which employ over-the-road drivers, and which are parties to or are bound by the National Master Freight Agreement and area supplements thereto, and which, as of December 31, 1972, employed at least 100 persons and which, as of that date, had annual gross revenues of at least $1,000,000." Seven such carriers have been named as representatives of the class, Rule 23(a)(4), and each member of the class has been fully advised of the pendency and progress of the action and of its right to appear personally before the court at any time.

On August 16, 1976, this court ordered certain absent, or nonparty, members of the defendant class to respond within forty-five days to plaintiffs' first set of interrogatories. Additionally the court ordered plaintiffs to provide it with a list of those absentees over whom the court could properly exercise personal jurisdiction and as to whom venue would be proper in the District of Columbia, and to identify, from among

that group, potential additional representatives. Since the seven party defendants were all parties to a consent decree disposing, as to them, of a number of the issues involved in this case, the court indicated that it would consider the need for or desirability of an order adding as party defendants members of the class that have not signed the decree. The court also indicated that it would entertain motions to split the defendant class into subclasses.

The matter is now before the court on plaintiffs' motion for an order to show cause why sanctions should not be imposed on those carriers that have failed to comply with the court's order of August 16 requiring them to respond to plaintiffs' first set of interrogatories. Additionally the court has before it various memoranda concerning the question whether additional representatives should be appointed and, if so, who those representatives should be. For the reasons discussed below, the court decides today to appoint the additional representatives suggested by plaintiffs, to deny plaintiffs' motion for a show-cause order, and to order those members of the defendant class that have failed to respond to plaintiffs' interrogatories to do so within forty-five days of their receipt of this order. Also, in view of the significance and novelty of the issues involved in this case, the court today will discuss at some length its rationale for having allowed this suit to proceed under Rule 23(b)(2) as a defendant class action.

## I. DEFENDANT CLASS ACTIONS GENERALLY

Rule 23, Fed.R.Civ.P., expressly provides for defendant class actions. Section (a) begins by stating: "One or more members of a class may sue or *be sued* as representative parties on behalf of all . . . ." (emphasis added). Nevertheless, comparatively few such suits have been brought. And of those that are reported,[1] none appears so ambitious as this one.

The cases in which courts have maintained defendant class actions generally involve attempts to enjoin numerous governmental officials from enforcing a statute, *e. g., Danforth v. Christian*, 351 F.Supp. 287 (W.D.Mo.1972); *Washington v. Lee*, 263 F.Supp. 327 (M.D.Ala.1966), *aff'd per curiam*, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968); or attempts to enjoin numerous business concerns from engaging in extrajudicial activity (e. g. repossession) under color of a statute, *e. g., Gibbs v. Titelman*, 369 F.Supp. 38 (E.D.Pa.1973); *Lynch v. Household Fin. Corp.*, 360 F.Supp. 720 (D.Conn.1973). It is easy to conceptualize these cases as defendant class actions. Plaintiff's challenge in each case is directed at everyone who derives authority from the statute, not at any particular defendant. In terms of Rule 23, all members of the class share an interest in the vitality of the statute, Rule 23(a)(2); any defenses the party defendants raise in support of its validity will surely be typical of those of the class, Rule 23(a)(3); and, absent extraordinary circumstances, there should be no reason to doubt the capacity of the party defendants to represent the interests of all, Rule 23(a)(4). As a practical matter, however, these cases are defendant class actions in form only. The central issue in each case is whether the statute itself is facially invalid. A determination to that effect would deprive all persons of authority to enforce the statute in any event.

In *Washington v. Lee, supra*, for example, six prisoners brought an action against all jailers and wardens in Alabama, seeking a declaration that certain Alabama statutes requiring racial segregation in state, county, and city penal facilities were unconstitutional. Plaintiffs also sought to enjoin the jailers and wardens from segregating prisoners on the basis of race in any of those facilities. The three party defendants contended that the action should not be certified since they could not adequately represent the interests of all class members.

---

1. *See, e. g.*, cases cited in note 5 *infra. See also* cases cited in Note, *F.R.Civ.P. 23: A Defendant Class Action with a Public Official as the*  *Named Representative*, 9 Val.U.L.Rev. 357 (1975).

They reasoned that the suit was impracticable since physical facilities varied from one jail to the next and some jails were substantially more difficult to operate than others. The court disagreed and certified the defendant class, reasoning essentially that the constitutionality of both the statutes and the practice of segregating prisoners on racial grounds involved "questions of law and fact common to these defendants and the members of the class which they represent . . . [Therefore] it is immaterial whether certain of these defendants are not otherwise identically situated." 263 F.Supp. at 330.

In *Gibbs v. Titelman*, 369 F.Supp. 38 (E.D.Pa.1973), plaintiffs sought to have declared unconstitutional a Pennsylvania statutory scheme concerning repossession of motor vehicles, and to enjoin General Motors Acceptance Corporation and all others similarly situated from continuing to effect extrajudicial nonconsensual repossession of motor vehicles. The court certified the defendant class, observing that "[t]he relief sought here is really against the statute, not the defendants." *Id.* at 53.

In the case before the court today, plaintiffs seek to enjoin several hundred firms, located throughout the United States, from engaging in employment discrimination. Plaintiffs also seek to recover back pay for individuals allegedly injured by members of the defendant class. If these firms are in fact violating the civil rights of blacks and Spanish-surnamed persons, they are not doing so under color of any statute. Rather, the only statute involved in this case is the one that prohibits employment discrimination, namely, Title VII. Thus, it is immediately apparent that this case is of a different breed.

## II. REPRESENTATIVENESS

Several nonparty members of the class have repeatedly made known to the court their concern that this is not a proper class action and that their interests are not adequately represented by the named defendants. With respect to the issue of "representativeness" these absentees have complained essentially that the named defendants have refused to file various motions on their behalf, e. g., motions to decertify the class and to stay discovery; that disparities in the size, operations, and locations of the defendants render effective representation of their interests impracticable in a class action context; and that, having all become parties to the consent decree, the named defendants have no active interest in a number of the issues in this lawsuit and therefore cannot be expected to represent the interests of those carriers that have not signed the decree.

On previous occasions the court has expressed its disagreement with each of these arguments and several of its reasons for rejecting them. Today the court will further explain its views.

The test for adequacy of representation in a defendant class action has been termed "similar to" that in cases involving plaintiff classes. *See 7 Wright & Miller, Federal Practice & Procedure*, Civil § 1770 (1972). Generally speaking, the named parties must be represented by qualified counsel, *see, e. g., Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.*, 285 F.Supp. 714, 721 (D.C.Ill.1968); and they must have common interests with, and not be antagonistic towards, their fellow class members. *See, e. g., Neal v. System Board of Adjustment*, 348 F.2d 722 (8th Cir. 1965).

The difficult problem in particular cases is determining whether there is sufficient "commonality" present to ensure fair treatment of absentees. This court takes the view that fair representation will be assured if the named parties—be they plaintiffs or defendants—share the interests of all class members with respect to the substantive issues in the suit. *See generally Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Developments, *Class Actions*, 89 Harv.L.Rev. 1317 (1976). If the interests of all class members coincide with respect to the merits of the suit, then in advocating their own interests the named parties will necessarily represent the interests of absentees as well.

To require more than representativeness as to the merits, however, as by insisting that the named parties share the views of all class members with regard to discovery and other *procedural* matters, or that they be able and willing to raise each and every procedural issue of interest to absentees, would rob the class action concept of its intended vitality. Rare indeed would be the case in which such requirements could be met. Thus the "substantive theory" of representativeness preserves the utility of class actions while ensuring fairness—especially where, as here, absentees have received notice of developments in the lawsuit and of their right to appear personally before the court at any time.

Most courts that have dealt with the question of representativeness have recognized that even the substantive issues involved in an action on behalf of a class will rarely, if ever, be totally identical. These courts have concluded that where the *claims* or *defenses* raised by the named parties are *typical* of those of the class, differences in the factual patterns underlying the claims or defenses of individual class members will not defeat the action. *See, e. g., Like v. Carter*, 448 F.2d 798, 802 (8th Cir. 1971), *cert. denied*, 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562–63 (2d Cir. 1968), *rev'd on other grounds*, 479 F.2d 1005 (2d Cir. 1973), *vacated*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Gibbs v. Titelman*, 369 F.Supp. 38, 52 (E.D. Pa.1973); *Vernon J. Rockler & Co. v. Graphic Enterprises Inc.*, 52 F.R.D. 335, 340 (D.Minn.1971); *Dolgow v. Anderson*, 43 F.R.D. 472, 490 (E.D.N.Y.1968), *rev'd on other grounds*, 438 F.2d 825 (2d Cir. 1970); *Washington v. Lee*, 263 F.Supp. 327 (M.D. Ala.1966), *aff'd, per curiam*, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968). *See also Lynch v. Household Fin. Corp.*, 360 F.Supp. 720 (D.Conn.1973); *United States v. Cantrell*, 307 F.Supp. 259 (D.C.La.1969). The critical question again, however, is what degree of dissimilarity in individual circumstances can be tolerated without sacrificing fairness to absentees. But even those courts that have refused to certify a class for want of commonality appear to have embraced the substantive theory of representativeness. Thus, for them, the problem was lack of *sufficiently* typical circumstances to justify certification. *See, e. g., Caldwell v. Craighead*, 432 F.2d 213 (6th Cir. 1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1617, 29 L.Ed.2d 123 (1971); *Coniglio v. Highwood Servs., Inc.*, 60 F.R.D. 359 (W.D. N.Y.1972); *United States v. T.I.M.E. DC, Inc.*, 335 F.Supp. 246 (N.D.Tex.1971); *Wilson v. Kelley*, 294 F.Supp. 1005 (N.D.Ga.), *aff'd on other grounds*, 393 U.S. 266, 89 S.Ct. 477, 21 L.Ed.2d 425 (1966).

In sum, where the court can fairly conclude that by pursuing their own interests vigorously the named representatives will *necessarily* raise all claims or defenses common to the class, representativeness will be satisfied. *Rosado v. Wyman*, 322 F.Supp. 1173, 1193 (S.D.N.Y.1970), *aff'd on other grounds*, 437 F.2d 619 (2d Cir. 1970), *cert. denied*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

Applying these considerations here, the court has had no reason to doubt the competency of counsel for the named representatives. Nor does there exist here the type or degree of antagonism of interest necessary to defeat the class. Absentees have complained that, because all defendants are competitors, their interests in this lawsuit may diverge; but it is well established that only a conflict that goes to the essential subject matter of the litigation—to the heart of the controversy—will defeat a claim of representative status. *E. g., Berman v. Narragansett Racing Ass'n, Inc.*, 414 F.2d 311 (1st Cir. 1969), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970); *Redmond v. Commerce Trust Co.*, 144 F.2d 140 (8th Cir.), *cert. denied*, 323 U.S. 776, 65 S.Ct. 187, 89 L.Ed. 620 (1944). In this case all members of the defendant class share a basic objective: to avoid or minimize liability under Title VII.

With respect to the question of commonality, the court believes that defendants have had an understandable tendency to exaggerate the complexity of the issues in-

volved in this litigation. Plaintiffs' essential contention is quite simple. They allege that a pattern of discriminatory employment practices exists in the trucking industry with respect to certain job classifications common to all members of the defendant class. Presumably they intend to establish that pattern by offering statistical proof that, in each community in which defendants operate, the qualifications defendants set for each job classification "select applicants for hire or promotion in a racial pattern significantly different from that of the pool of applicants." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975). Ultimately, then, the court will have to decide what degree of statistical imbalance constitutes a *prima facie* case of unlawful discrimination in the context of this lawsuit, and what defenses (i. e. nonracial explanations of the imbalance), if any, suffice as a matter of law to overcome such a case. *See generally Albemarle Paper Co., supra; Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). *See also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

With respect to the threshold matter in this litigation, the requisites of a *prima facie* showing of unlawful discrimination, the party defendants will undoubtedly have much to say. The court has no reason to expect that their position on this issue will be anything other than representative of the class as a whole. Once appropriate standards are determined, the court will apply them to the circumstances of individual firms. Those firms against which plaintiffs are unable to establish a *prima facie* case will not be subject to liability in any event. In effect, they will be excluded from the class at that time.

With regard to defenses to plaintiffs' allegations, it is no surprise to find that the answers individual firms have filed with the court are identical in all material respects. This is so because few defenses other than "I didn't do it" are available in a Title VII action such as this one. If it is shown that members of the defendant class have embraced discriminatory policies, the burden will shift to the party defendants to explain why. *See generally Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). And there is no reason to believe that lawful, that is nonracial, qualifications for each job classification (e. g. road driver) will vary from firm to firm. In short, since the party defendants are both large and small and have operations throughout the United States, they are surely "representative of" the class as a whole. Since they utilize job classifications identical to those of all class members, the court remains satisfied that, in furtherance of their own interests, they will necessarily raise any and all defenses common to the class.[2]

It must be emphasized that this is not simply a case in which the plaintiffs have attempted to lump together numerous unrelated or superficially-related firms on the theory that all of them engage in employment discrimination. In such a case a court might well conclude that any commonality is no more than illusion and is insufficient to justify class treatment. Here, each member of the defendant class provides an identical service, requires employees who possess identical skills, and utilizes identical job classifications. Perhaps most telling, each is party to the National Master Freight Agreement or its area supplements. These agreements bind the employment practices of the entire class in certain crucial respects, e. g., with respect to seniority. Thus, these agreements serve a function

---

**2.** Resolving certain issues of remedy might prove substantially more complex than resolving the issue of liability. With respect to back pay, for example, the court might find that questions concerning the facts and circumstances of each defendant predominate over questions common to the class. Thus, if liability is established, the court might then have to re-examine whether several defendants can adequately represent the interests of all. At this stage of the litigation, however, in gauging representativeness the court has no need to take into account matters of remedy. The court has ample flexibility under sections (c)(4) and (d) of Rule 23 to deal with the problem if it arises.

analogous to that served by the statutes at issue in *Washington v. Lee* and *Gibbs v. Titelman*, the defendant class actions discussed in Part I of this opinion. First, the agreements delimit the defendant class. Indeed, this bond between the class members suggests to the court that in a practical sense they themselves have elected to become a "class." Second, the legality of certain provisions of these agreements is at issue in this case. Surely it is sensible and consistent with class action doctrine in general to assume that the named parties can and will adequately defend the employment practices prescribed by these freight agreements; thus it would be fair to bind the entire class under a single determination that those agreements are unlawful insofar as their seniority provisions are concerned. Moreover, under these circumstances the court believes that "all defendants are juridically related in a manner that suggests a single resolution of the [entire] dispute would be expeditious." *La Mar v. H & B Novelty & Loan Company*, 489 F.2d 461, 466 (9th Cir. 1973) (dictum); Cf. *Samuel v. University of Pittsburgh*, 56 F.R.D. 435 (W.D. Pa.1972); *Broughton v. Brewer*, 298 F.Supp. 260 (N.D.Ala.1969).

There remains the question whether the named defendants' participation in the consent decree renders suspect their capacity to represent vigorously the interests of those absentees that have not signed the decree. The decree explicitly resolves several issues in this suit insofar as signatories are concerned but not as to the other defendants. Thus it can be argued that since all the named defendants are signatories, they do not have interests "coextensive"[3] with those of the entire class and their representation of the class has necessarily been inadequate since the date on which they joined in the decree.

In its opinion of August 16 the court expressed several reasons underlying its conclusion that the decree does no damage to representativeness in this case. Principal among them was the fact that the decree does not resolve the entire dispute between plaintiffs and the named defendants. Participation in the decree does not constitute an admission that a defendant's employment practices have in any respect run afoul of either Title VII or Executive Order 11246. And although the decree requires signatories to take certain affirmative steps with regard to hiring, assigning, and promoting black and Spanish-surnamed persons, it leaves open the transfer and seniority issues. Thus the named defendants continue to have substantial interests in this litigation adverse to those of plaintiffs and representative of those of the class.[4]

In addition, that it is the *seniority* issue that remains in dispute goes a long way toward ensuring that the interests of absentees are protected and would be asserted at trial whether or not additional representatives were appointed. Seniority takes on pervasive significance in a case where plaintiffs challenge *all* of a defendant's employment practices. This is so because an employee's seniority depends largely on other employment practices and policies in effect in the firm. If, for exam-

---

3. Some courts have said representativeness requires that the named parties have interests "coextensive" with those of all class members. E. g., *Daye v. Pennsylvania*, 344 F.Supp. 1337, 1342 (E.D.Pa.1972), aff'd, 483 F.2d 294 (3d Cir. 1973), cert. denied, 416 U.S. 946, 94 S.Ct. 1956, 40 L.Ed.2d 298 (1974). "Coextensiveness of interests," however, is nothing more than another way of saying that the representative's claims or defenses must be *typical* of those of the class. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562–63 (2d Cir. 1968), rev'd on other grounds, 479 F.2d 1005 (2d Cir. 1973), vacated, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

4. Even if the consent decree had disposed of all issues, nonsignatories could not necessarily succeed in urging a denial of due process. A number of cases stand for the proposition that the fact that the class representative has settled his case neither moots the class action nor disqualifies the representative from continuing to represent the class. E. g., *Jenkins v. United Gas Corp.*, 400 F.2d 28 (5th Cir. 1968); *Stokes v. Bonin*, 366 F.Supp. 485 (E.D.La.1973); *Thomas v. Clarke*, 54 F.R.D. 245 (D.Minn. 1971); *Davis v. Caldwell*, 53 F.R.D. 373 (N.D. Ga.1971).

ple, an employer fails to *hire* blacks, or to *assign* and *promote* them to higher-level job classifications, and there is in force in the firm a collective bargaining agreement that conditions seniority on *time* spent in the firm or in a particular job, then either no blacks will have seniority, or those who do will necessarily stand at the bottom of the seniority ladder for all but the lower-level job classifications. In such circumstances it would be no answer to say there were no blacks available within the firm who qualified for seniority in higher-level jobs. Rather, the employer would have to explain and defend the conditions that bred discriminatory results. Accordingly, if in this case defendants' employment policies are shown to have a discriminatory impact on blacks and Spanish-surnamed persons, to defend their seniority policies the party defendants will have to explain and defend their policies with respect to hiring, assignment, transfer, and promotion as well. The named defendants therefore continue notwithstanding the consent decree to have every incentive to litigate vigorously the question of "discriminatory effect" or "imbalance," on which a *prima facie* case depends, and, in the event such a case is established, to raise any defenses common to the class.

For all of the reasons expressed today, the court has throughout this litigation adhered to the view that the party defendants ensure ample representation of absentees' interests. Thus, were due process the only consideration, the court would not name additional party defendants at this time.

## III. CERTIFICATION UNDER RULE 23(b)(2)

A class action may be maintained under Rule 23(b)(2), Fed.R.Civ.P., if the prerequi-

sites of Rule 23(a) are satisfied and in addition:

> "[T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . ."

Several absentees have argued that (b)(2) is unavailable in a defendant class action. They are joined in this argument by various commentators. *See 7a Wright & Miller, Federal Practice & Procedure*, Civil § 1775 at 21–2(1972); Note, *F.R.Civ.P. 23: A Defendant Class Action with a Public Official as the Named Representative*, 9 Val.U.L. Rev. 357, 391–96 (1975). Cf. Note, *Proposed Rule 23: Class Actions Reclassified*, 51 Va. L.Rev. 629, 648–49 (1965).[5]

The argument is essentially as follows: The "party opposing the class" can only be the defendant, since only a defendant's "act[ion] or refus[al] to act on grounds generally applicable to [a] class" can "mak[e] appropriate final injunctive relief . . . with respect to [a] class as a whole." In short, the argument runs, only a defendant's conduct can justify an injunction. If "the party opposing the class" must be the defendant, then, of course, the class must consist of plaintiffs.

This court cannot accept such an interpretation. First, the argument simply assumes its conclusion, namely, that only defendants can act on grounds generally applicable to a class and thereby make injunctive relief appropriate. Second, it neglects to consider why the drafters of Rule 23 would bother to employ a phrase so cumbersome as "the party opposing the class" if they meant, simply, "the defendant." Indeed, the court wonders how one can identify "the party opposing the class" without asking which side the class is on. Third, the

---

**5.** *But see, e. g., Gibbs v. Titelman*, 369 F.Supp. 38 (E.D.Pa.1973); *Lynch v. Household Fin. Corp.*, 360 F.Supp. 720 (D.Conn.1973); *Danforth v. Christian*, 351 F.Supp. 287 (W.D.Mo. 1972); *Pennsylvania Ass'n, Ret'd Child. v. Commonwealth of Pa.*, 343 F.Supp. 279 (E.D.

Pa.1972); *Samuel v. University of Pittsburgh*, 56 F.R.D. 435 (W.D.Pa.1972). Courts in these and other cases have paid little attention to the position advanced by Wright and Miller and have maintained defendant class actions under

argument takes the rule out of context[6] and, for no apparent purpose, would deprive the concept of a defendant class action of much of its utility.

▮▮▮ The court is of the opinion that section (b)(2) is designed simply to facilitate class actions in which injunctive relief plays a central role. Whether the injunction would bind all members of a defendant class or benefit all members of a plaintiff class, or both, should be of no consequence so long as the complaint raises issues common to the class.

▮▮▮ The language of (b)(2), although awkward, is consistent with this approach. Thus, where plaintiff alleges that each member of a defendant class has engaged in essentially the same unlawful conduct, plaintiff "has acted . . . . on grounds generally applicable to the [defendant] class" merely by bringing the action. Assuming the allegations are of a sort that would support injunctive relief against each defendant individually, by proving his case plaintiff would make "appropriate final injunctive relief . . . with respect to the class as a whole." *See Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.*, 285 F.Supp. 714, 723 (N.D.Ill.1968).

That this construction of the rule has appeared maladroit to commentators may stem from our lack of experience with defendant class actions. Ordinarily, we think in terms of a single defendant who allegedly has acted unlawfully on grounds generally applicable to a class of plaintiffs. Given this frame of reference, it is understandable that we might have difficulty accepting the notion that a plaintiff acts on grounds generally applicable to a defendant class merely by bringing the action. For by "act" we normally mean "unlawful act," i. e., the

substantive conduct giving rise to a claim for relief, not the procedural act of asserting that claim.

▮▮▮ Nothing in Rule 23, however, suggests the drafters had in mind such a distinction. Nor should they have, inasmuch as class certification is indeed a matter of procedure. Certification is intended to facilitate fair and expeditious adjudication of the rights and obligations of the parties; it is not determinative of those rights and obligations. And for purposes of certification, a court must rely on plaintiff's allegations regardless of whether a plaintiff or defendant class is involved. Thus, where certification of a plaintiff class is the issue, the question is whether each plaintiff has alleged common grounds for relief. And with respect to a defendant class action, the question is whether plaintiffs have alleged that each defendant has engaged in a common course of unlawful conduct. Given that plaintiff's allegations control at all events, it is senseless to say that a plaintiff class alleging unlawful conduct by a defendant merits certification, but that a defendant class alleged by a plaintiff to have engaged in unlawful conduct should not be certified. Such a distinction is meaningless and altogether out of harmony with a rule that expressly provides for defendant class actions. After all, the most obvious way, if not the only way, to bring a defendant class action is to allege that a class of defendants has engaged in a common course of unlawful conduct.

Regardless of one's views concerning the debate over the language of section (b)(2), there are a number of reasons why certification under that section seems especially appropriate in this case.

▮▮ First, the Advisory Committee's Note to the 1966 Amendments to Rule 23

---

section (b)(2). There appears to be no judicial authority to the contrary.

**6.** As mentioned earlier, Rule 23(a) begins by stating: "One or more members of a class may sue or be sued . . . ." Thus the drafters clearly contemplated application of Rule 23 to defendant class actions. In addition, another reference to "the party opposing the class" appears in section (b)(1)(A) of the rule. That section speaks in terms of actions brought by

or *against* individual members of the class. Thus the drafters must have had in mind plaintiffs as well as defendants when they referred to "the party opposing the class." It would tax the court's imagination, after carefully examining the entirety of Rule 23, to come to the conclusion that section (b)(2) is somehow different from (b)(1) and (b)(3) such that it should apply only to plaintiff class actions, despite no explicit indication to that effect.

indicates that section (b)(2) is intended particularly as a vehicle for suits alleging civil-rights violations directed at a class.[7] 39 F.R.D. 69, 102 (1966). Thus Title VII actions are especially fit for (b)(2) treatment, *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 250 (3d Cir. 1975). And although the rule speaks in terms of injunctive relief, a number of courts have held that a (b)(2) class is appropriate in a Title VII suit where, as here, monetary as well as injunctive relief is sought. *E. g., Franks v. Bowman Transp. Co.*, 495 F.2d 398 (5th Cir. 1974), *cert. denied*, 419 U.S. 1050, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974), *reh. denied*, 420 U.S. 984, 95 S.Ct. 1417, 43 L.Ed.2d 667 (1975); *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir. 1971), *petition for cert. dismissed*, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1972); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711 (7th Cir. 1969).

█ Second, as the Advisory Committee's Note illustrates, the rule enables a court to enjoin a *pattern* of discriminatory policies and practices. 39 F.R.D. at 102. If plaintiffs succeed here in proving that such a pattern exists in the trucking industry and defendants' representatives can offer no legitimate explanation for it, a broad remedial order would seem entirely consistent with the scheme and spirit of 23(b)(2). *Cf. Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 914 (9th Cir. 1964); *Hecht v. Cooperative for American Relief Everywhere, Inc.*, 351 F.Supp. 305 (S.D.N.Y. 1972); *Bishop v. Jelleff Assoc., Inc.*, 16 F.R. Serv.2d 544 (D.D.C.1972); *Hicks v. Crown Zellerbach Corp.*, 49 F.R.D. 184 (E.D.La. 1968).

█ Third, absent members of the class have no opportunity to opt out of a suit certified under section (b)(2). *See* Rule 23 (c)(2), Fed.R.Civ.P. For this reason, that section serves a useful, if not essential, purpose in a defendant class action. Defendants, unlike plaintiffs, are ordinarily involuntary participants in a lawsuit. To provide them the wherewithal to frustrate a suit that is properly certifiable as a class action simply by refusing to participate in it—by opting out—would be anomalous. Indeed, to enable defendants to defeat the "class" aspect of the action would enfeeble an otherwise potent means for remedying at once widespread civil-rights violations and other unlawful conduct. Hence, once a court has determined that an action such as this one is fair to the defendant class, manageable, and otherwise proper under Rule 23(a), (b)(2) may be the only practical certification available.[8]

Fourth, as a practical matter the plaintiffs in this action include not merely the Department of Justice and the Equal Employment Opportunity Commission; the "real" plaintiffs are those individuals who allegedly have been injured by defendants' employment practices. Viewed this way the suit is, in effect, both a plaintiff and a defendant class action. With respect to the language of Rule 23(b)(2), the suit then appears to be one in which *each* side has acted on grounds generally applicable to the other.

## III. MANAGEABILITY

The court recognizes its duty to manage the progress of this suit and, in doing so, to

---

**7.** As the court will point out below, the "real" plaintiffs in this action are the class of blacks and Spanish-surnamed persons allegedly injured by defendants' employment practices.

**8.** Section (b)(3), which clearly applies to defendant class actions, is subject to the opt-out provision in Rule 23(c)(2). The Advisory Committee's Note to the 1966 Amendments to Rule 23 mentions briefly the general theory underlying exclusion from a (b)(3) action:

"[T]he interests of the individuals in pursuing their own litigations may be so strong here as to warrant denial of a class action altogether. Even when a class action is maintained under subdivision (b)(3), this individual interest is respected."

39 F.R.D. 69, 104–05 (1966). Unfortunately, the committee provides no examples of circumstances in which a *defendant* might be justified in excluding himself from a proper class action. Nor does it discuss the practical implications of exclusion from a defendant class.

The court questions the wisdom of permitting defendants to opt out of a suit that is properly certifiable as a defendant class action. At any rate, where fair representation of the class is assured, and injunctive relief is sought, certification under section (b)(2) is clearly the better alternative.

pay particular heed to the interests of absentees. As Professor Chafee has observed, the court

"ought to scrutinize the selected representatives of the defendant class with the greatest care and arrange for changes or additions if there is the slightest reason to suspect incompetence or the absence of the will to fight. The judge ought to regard the unnamed members of the sued class as wards of the court for the time being . . . ."

Z. Chafee, *Some Problems of Equity* 238 (1950). As Chafee goes on to say: "Unless the judge looks after the unnamed persons, nobody looks after them." *Id.* at 242.

One form of protection the court has employed has been to invite absent members of the class to appear personally before the court whenever they think it necessary or advisable to do so. Absentees have accepted the invitation by filing briefs with the court on numerous occasions.

At this late stage of the lawsuit, even though due process may not require appointment of additional representatives, the court is inclined to take whatever steps may be helpful to bring this matter to its conclusion in as fair and expeditious a manner as possible. The court believes that additional party defendants might be able to make a meaningful contribution toward this end. Also, by appointing nonsignatories as party defendants, the court can alleviate any lingering concern nonsignatories may have about fair representation of their interests. That in itself is obviously desirable.

■ In consideration of the objections and reservations certain absentees have expressed with regard to the representation accorded their interests to date, the court can see no purpose to be served by ordering them to show cause why sanctions should not be imposed on them. Surely they would assert lack of representativeness as their basis for failing to comply with the court's August 16 order. Since the court believes they have adhered to this view in good faith, it is not disposed to impose sanctions on them at this time.

Finding no jurisdictional, venue, or other impediment to their appointment as representatives of the class, the court hereby names as party defendants in this action the following additional carriers: [9]

Commercial Motor Freight, Inc.
Columbus, Ohio
Duff Truck Line, Inc.
Lima, Ohio
O. K. Trucking Company
Cincinnati, Ohio
Suburban Motor Freight, Inc.
Columbus, Ohio

Those absentees that have not yet responded to plaintiffs' first set of interrogatories are hereby directed to do so within forty-five (45) days of their receipt of this order. No further extensions will be granted.

Plaintiffs' motion for an order to show cause why sanctions should not be imposed is hereby denied.

It is so ORDERED.

---

**9.** It should be noted that only "token weight" need be given to a class member's desire, or lack of it, to serve as representative of the class. *E. g., Research Corp. v. Pfister Associated Growers, Inc.*, 301 F.Supp. 497, 499 (D.C.Ill. 1969), *appeal dismissed sub nom. Research Corp. v. Asgrow Seed Co.*, 425 F.2d 1059 (7th Cir. 1970).