Joseph D. ADASHUNAS, a minor by his parents, Alvin and Olga Adashunas, on behalf of themselves and all others similarly situated, Plaintiff-Appellant,

v.

Harold H. NEGLEY et al., Defendants-Appellees.

No. 80–1075.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1980.

Decided Aug. 1, 1980.

Rehearing and Rehearing In Banc Denied Sept. 22, 1980.

Rosalie B. Levinson, Valparaiso, Ind., for plaintiff-appellant.

David M. Wallman, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and SPRECHER and WOOD, Circuit Judges.

SPRECHER, Circuit Judge.

The major issue in this appeal is whether the district court abused its discretion in denying certification of a plaintiff class consisting of all learning disabled children in Indiana.

I

On May 18, 1976, the parents of two minor children residing and attending public elementary schools in LaPorte County, Indiana, brought a class action on behalf of all children attending public schools within Indiana who have specific learning disabilities and are not receiving adequate special education. The suit was filed under 42 U.S.C. § 1983 and the First, Ninth and Fourteenth Amendments, and seeks declaratory, injunctive and monetary relief. The complaint named thirty-six defendants, consisting of seven state educational agency members and twenty-nine LaPorte County officials or educational agency members. The complaint did not originally allege that the named defendants represented a defendant class.

On October 12, 1976, the complaint was amended to add a claim under the Education for All Handicapped Children Act, 20 U.S.C. §§ 1401 to 1461, and to allege a defendant class, whose members were

the superintendent and school board members of each Indiana public school corporation which fails to identify all students who are neurological im-

paired/learning disabled and fails to provide access to a minimally adequate education suited to the needs of all such students.

First Amended Complaint, Record, Vol. I, Document No. 19.

Discovery revealed that the schools attended by both the named plaintiff minors, as well as several other LaPorte County schools, were members of the South LaPorte County Special Education Cooperative. Consequently, on March 25, 1977, a second amended complaint was filed, adding four additional defendants—the South LaPorte County Special Education Cooperative and three members of the Cooperative's Advisory Committee. The amended complaint also added a claim under the Rehabilitation Act, 29 U.S.C. §§ 701 to 794. See Second Amended Complaint, Record, Vol. I, Document No. 39.

On August 11, 1977, the plaintiffs moved the district court to determine and certify plaintiff and defendant classes as follows:

(1) plaintiff class composed of all children within the State of Indiana entitled to a public education who have learning disabilities who are not properly identified and/or who are not receiving such special instruction as to guarantee them of minimally adequate education; . . .

(2) defendant class composed of the superintendent and school board members of each Indiana public school corporation that fails to identify all students with learning disabilities and/or fails to provide access to a minimally adequate education suited to the needs of all such students.

Motion for Order Determining Plaintiff and Defendant Classes, Record, Vol. I, Document No. 41.

The named plaintiffs urged the district court that they could adequately represent the plaintiff class and that the LaPorte County defendants could represent the defendant class. The named defendants opposed certifying either a plaintiff or a defendant class.

Thereafter, the numerous named defendants moved the court either to dismiss the action or to enter summary judgment in their favor. On November 23, 1977, the court dismissed seventeen of the named defendants because they were all named as township trustees in LaPorte County and they "have no power, authority or right to control the operation of any school corporation in LaPorte County or in the State of Indiana and, therefore, are neither necessary, proper or indispensible parties to this action." No. S–76–72 (N.D.Ind. Nov. 23, 1977).

On December 18, 1978, after testing and conferences, Joseph Adashunas, one of the named plaintiff minors, was determined to be learning disabled and entitled to a special education program by the South LaPorte County Special Education Cooperative. The following day he was enrolled in the learning disability program conducted by the cooperative.

The other named plaintiff minor, Shannon Durbin, was found, after extensive testing, not to be learning disabled. On June 4, 1979, she and her parent advised the court that they "no longer wish[ed] to be plaintiffs in this litigation," Motion to Dismiss, Record, Vol. II, Document No. 72, and they were dismissed. No. S–76–72 (N.D. Ind. June 5, 1979).

The court had advised the parties that all pending motions to dismiss would be treated as motions for summary judgment and that all parties could submit supplemental materials in support of their motions.

On December 17, 1979, the district court entered its order, finding and holding:

(1) That the defendants were entitled to summary judgment against Joseph Adashunas on his claim under the Education for All Handicapped Children Act. Under that Act, all recipients of federal funds must provide a free appropriate education to all handicapped children by September 1, 1978. See 20 U.S.C. § 1412(2)(B). Indiana is a recipient of funds, and on June 14, 1978, the

Commission on General Education of the Indiana State Board of Education promulgated an amended Rule S–1, which, among other things, allows students or their parents to initiate proceedings to determine whether the student is in need of special education. As a result of Rule S–1 remedies, Adashunas was placed in a special education program on December 19, 1978, which mooted his claim that he should be placed in such a program.

(2) That the defendants were entitled to summary judgment against Adashunas on his claim for injunctive relief under the Rehabilitation Act, because the placing of Adashunas in a special education program also mooted that claim. However, the plaintiff was allowed to pursue his claim for compensation under the Rehabilitation Act, subject to trial on that claim.

(3) That the plaintiff's constitutional claim was without merit.

(4) That the plaintiff's motion for class certification was denied.

Adashunas has appealed the denial of injunctive and declaratory relief and the denial of class certification.

## II

Several questions have been raised regarding the appealability of the district court order.[1] Inasmuch as the plaintiff did seek a partial summary judgment, including injunctive relief, the denial of an injunction qualifies the order for appeal under 28 U.S.C. § 1292(a)(1). Because the denial of injunctive relief is interdependent with the remainder of the appealed order, *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 522 F.2d 1235, 1237–38 (7th Cir. 1975), reheard in banc on other grounds, 538 F.2d 164 (7th Cir. 1976), this court may consider the entire order insofar as it has been appealed. See *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.,* 560 F.2d 1325, 1335 (7th Cir. 1977).

The fact that much of the plaintiff's individually sought relief was denied on the

---

1. The district court denied a request to certify an interlocutory appeal under 28 U.S.C. § 1292(b). No. S–76–72 (N.D.Ind. Jan. 25, 1980).

basis of mootness does not disqualify the plaintiff from appealing the denial of certification of the class. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Deposit Guaranty National Bank of Jackson v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *Susman v. Lincoln American Corp.*, 587 F.2d 866, 868–71 (7th Cir. 1978).

■ We also note preliminarily that the district court correctly concluded that the Rehabilitation Act does provide the handicapped with affirmative rights, does create a private right of action and does not require exhaustion of administrative remedies. See *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977).

Finally, it does not appear that the plaintiff has appealed the constitutional question applying to him in his individual capacity, but inasmuch as this is only an appeal of an interlocutory order, the plaintiff may raise that question when and if he appeals any final judgment regarding his individual rights.

### III

The district court found and concluded that the State of Indiana defendants complied with the Education for All Handicapped Children Act "[a]t least with regard to this plaintiff's claims," by adopting Rule S–1, and that the LaPorte County defendants likewise complied by granting the plaintiff the relief he sought, subject to trial upon the question of damages. No. S–76–72 (N.D.Ind. Dec. 17, 1979), memo. op. at 3. Upon this appeal, the plaintiff does not deny that he received and is receiving special education and that his individual claims have become moot.[2] The briefs on appeal deal in major part with the denial of class certification and with the class action claims.

■ In order to state a class action claim upon which relief can be granted, there must be alleged at the minimum (1) a reasonably defined class of plaintiffs, (2) all of whom have suffered a constitutional or statutory violation (3) inflicted by the defendants. The complaint as amended in this case is seriously deficient in all three respects insofar as the class action is concerned.

■ The plaintiff class consists of children entitled to a public education who have learning disabilities and "who are not properly identified and/or who are not receiving" special education. In the comprehensive discovery undertaken and numerous affidavits filed, it does not appear that there are numerous identifiable children not receiving special education in Indiana, but only suspected-to-exist children with learning disabilities "who are not . . . identified."[3] How does one identify class members consisting of persons not identified? This might be conceivably possible if identification were a simple process. However, the record abundantly demonstrates that identifying learning disabled children is a gargantuan task.

The major reason that identification of the learning disabled child is very difficult is that such a child usually possesses a normal or above-average intellectual ability. The two originally named minor plaintiffs were so described in their own pleading. Joseph Adashunas was alleged to be within the bright-normal range of intelligence and has a mental age beyond his chronological age. Second Amended Complaint, ¶ 62, Record, Vol. I, Document No. 39. Plaintiff acknowledged that "it took defendants almost three years to recognize his disability," Reply Brief at 4, and defendants included and were assisted by experts in the field of learning disabilities. Shannon Durbin, the other original named plaintiff mi-

---

2. The plaintiff complains on appeal that the Act became effective September 1, 1978, and that he did not receive special education until December 19, 1978. Presumably, if he can prove damages at trial, this factor can be dealt with at that time.

3. The plaintiff relies on statistics that 1% or 2% of the total school population is learning disabled.

nor, was alleged to have an above-average Intelligence Quotient and mental age. *Id.* ¶ 32. Despite the extreme pressure of this lawsuit upon the defendants to identify her as learning disabled, it was finally concluded after diligent testing, conferences and observation that she was *not* learning disabled and she was dismissed as a plaintiff. If, out of two minors believed by their parents to be learning disabled to the extent that they would file a ponderous lawsuit, three years of testing resulted in one being so found and the other not, how can others be readily identified without parental pressure and without the constraints of a lawsuit?

In Indiana, for the school year 1977–78, there are 6,754 children participating in approved special education programs. However, these children are identified and receiving special education and are therefore outside the class. In other words, those more obviously identifiable have been or are being identified. Those who have not been identified either may not exist or are exceedingly difficult to identify if they do exist.

The plaintiff's own expert witnesses conceded in affidavits that a "battery" of tests are needed to identify a learning disabled child; that the symptoms are widely diverse; that the only way possibly to identify such a child is to monitor a "clustering" of different test results in order to discover those which may reflect weakness in any given area of potential learning disability. See Affidavit of Erminia Ballard, ¶¶ 10 & 13, Record, Vol. II, Document No. 51. This is a long, arduous process.

If, despite the difficulty in locating prospective children for extensive testing, the testing finally takes place, many diverse results may occur. Some children, like Shannon Durbin, may be found not to be learning disabled; some children may have such slight disability that special education is not warranted; some children may have such severe disability that they are not educable at all; and finally, some parents of learning disabled children may refuse to permit special education. Some parents may even refuse the possible identification tests.

In summary, the proposed class of plaintiffs is so highly diverse and so difficult to identify that it is not adequately defined or nearly ascertainable. Hence, for that reason, the plaintiff class cannot be maintained. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). In addition, as Judge Eschbach observed in a similar situation in *Dafforn v. Rousseau Associates, Inc.*, 1976–2 Trade Cases ¶ 61,219 (N.D.Ind.1976):

> The new class definition, if allowed, would result in a "fail-safe" class, a class which would be bound only by a judgment favorable to plaintiffs but not by an adverse judgment.

*Id.* at p. 70,577. See also *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 467 (9th Cir. 1973).

The second deficiency in the class action claims is that since the proposed class is so amorphous and diverse, it cannot be reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief. If the conceived injury is abstract, conjectural or hypothetical as here, instead of real, immediate or direct, the complaint fails to cite an actual case or controversy under Article III of the Constitution. *O'Shea v. Littleton*, 414 U.S. 488, 493–94, 94 S.Ct. 669, 674–75, 38 L.Ed.2d 674 (1974).

Finally, the third deficiency inheres in the attempt to name a defendant class instead of naming and serving summons on named defendants.

As Professor Moore has pointed out, the language of Fed.R.Civ.P. 23(b)(2) [4] must be

---

4. Rule 23 provides in pertinent part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"wrenched to fit" the concept of a defendant class if indeed the language can be stretched in that direction at all. 3B *Moore's Federal Practice* ¶ 23.40[6], at 23–310 (2d ed. 1980). "There is certainly a substantial question as to whether this general approach to litigation and inclusion of a defendant class could ever be sanctioned under Rule 23 . . . ." *Mudd v. Busse*, 68 F.R.D. 522, 526 (N.D.Ind.1975). "[T]he very notion of a defendant class raises immediate due process concerns." *Marchwinski v. Oliver Tyrone Corp.*, 81 F.R.D. 487, 489 (W.D.Pa.1979).

The district court has held that the state defendants have complied with the Education for All Handicapped Children Act, see 20 U.S.C. § 1413, and that the LaPorte County defendants have also done so. See *id.* § 1414. The congressional conferees responsible for the bill, "note that the local educational agency has the major responsibility in providing direct services to handicapped children . . . ." Sen.Rep.No. 94–455, 94th Cong., 1st Sess., [1975] U.S. Code Cong. & Admin.News, p. 1425. Again, because of the diverse nature of the relation between handicapped children and local educational agencies, it is difficult to imagine any case where a defendant class of such agencies would be appropriate. In this case, however, there is the additional factor that the named defendants could not adequately represent other local agencies with entirely different problems. See Fed.R. Civ.P. 23(a)(4).

■ The standard of review of the denial of class certification is whether the court abused its discretion. *Bogus v. American Speech & Hearing Ass'n*, 582 F.2d 277, 289 (3d Cir. 1978). We cannot say that the court here abused its discretion.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

     \*   \*   \*   \*   \*   \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . .

Because plaintiff Adashunas' claims for declaratory and injunctive relief have been mooted by his enrollment in a special education class, our disposition of the class certification issue precludes our addressing the merits of those two claims. The judgment order appealed from is affirmed.[5]

5.  Observations in this opinion relating to learning disability are fully substantiated by the ample record on appeal. However, they are further buttressed by the following: W. Bush and K. Waugh, *Diagnosing Learning Disabilities* (2 ed. 1976); *Learning Disabilities Handbook: A Technical Guide to Program Development* (D. Sabotino ed. 1976); *Perspectives in Learning Disabilities* (B. Jordan ed. 1976); and G. Wallace and J. Kauffman, *Teaching Children with Learning Problems* (2d ed. 1978).