See also D.C., 92 F.R.D. 754.

Margaret COLEMAN, et al., Plaintiffs,

v.

Robert McLAREN, et al., Defendants.

No. 78 C 2117.

United States District Court,
N.D. Illinois, E.D.

July 5, 1983.
Supplemental Opinion July 14, 1983.

Ronald L. Futterman, Robert M. Weissbourd, Hartunian, Futterman & Howard, Marshall Patner, Jack Uretsky, Fitch, Even, Tabin, Flannery & Welsh, Chicago, Ill., for plaintiffs.

Fred L. Foreman, State's Atty. of Lake County and James C. Bakk, Asst. State's Atty. of Lake County, for Lake County defendants.

James R. Schirott and John T. Elsner, Schirott & Elsner, Itasca, Ill., for DuPage County defendants.

Neil F. Hartigan, Atty. Gen. of Ill. and Gary E. Medler, Asst. Atty. Gen., for defendant Judge Ward.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Nine Lake and DuPage County taxpayers have brought this class action, principally under 42 U.S.C. § 1983 ("Section 1983"), against officials and governmental bodies involved in the real estate tax assessment systems of all Illinois counties other than Cook.[1] Count I of plaintiffs' Second Amended and Supplemental Complaint (the "Complaint") attacks those systems as violative of the Illinois Constitution and the federal constitutional guaranties of due process and equal protection. Plaintiffs have now moved pursuant to Fed.R.Civ.P. ("Rule") 23(c)(1) to certify[2] bilateral classes and subclasses under Count I. For the reasons stated in this memorandum opinion and order, plaintiffs' motion is granted in part and denied in part.

### Assessment Procedures and Count I's Theories

Before exploring the Count I allegations, this section will briefly describe the assessment process and the available state remedies for challenging assessments. That background is necessary for an understanding of plaintiffs' attack.

Township assessors are responsible for appraising real estate in their respective jurisdictions. They must complete that task by June 1 of the "assessment year" (it is not until the following year that the actual tax bill will arrive). By that same June 1 date, each owner of reassessed real estate must be apprised of his or her assessment (by mail and newspaper publication). That notice must convey:

(1) the median level of assessments in his or her district;

(2) the immediately previous and current assessed values of his or her property;

(3) the relationship between the assessment and the tax bill;

(4) the statutory mandate that each assessment must reflect 33⅓% of the real estate's market value; and

(5) the procedures and time limits for challenging the assessment.

If dissatisfied with the assessment, the taxpayer must first file a complaint with the Board in his or her county.[3] Each complaining taxpayer must be given a hearing, and the Board must render all its decisions by December 31 of the assessment year. If the taxpayer is unappeased by the Board's determination, he or she has the choice of two mutually exclusive remedies, each of which affords de novo consideration. One route is to appeal to PTAB and then to seek review of any adverse PTAB determination in the appropriate Illinois Circuit Court. Alternatively the taxpayer may pay the contested tax under protest and then submit a tax objection when the county collector files an application for judgment before the Circuit Court.

---

1. Defendants include DuPage and Lake Counties (the "Counties") as representative of the class of all Illinois counties other than Cook County; Supreme Court Justice Daniel P. Ward ("Justice Ward") as representative of the class of all Illinois judges who do not sit in Cook County; DuPage and Lake County Board of Reviews ("County Boards"); certain members of the County Boards; the Supervisor of Assessments in each County; Downers Grove and West Deerfield Townships (the "Townships") in DuPage and Lake Counties, respectively; the assessor in each Township (the "Township Assessors"); the Illinois Property Tax Appeal Board ("PTAB"); the PTAB Chairman; and the Attorney General of Illinois.

2. Rule 23(c)(1) literally speaks of a determination whether an action may be maintained as a class action. That determination has universally come to be known as certification, and this opinion will use that terminology.

3. Before initiating the formal administrative review process, the taxpayer may but need not attempt to express his or her grievances informally to his or her Township Assessor or his or her County Supervisor of Assessments, each of whom is authorized to correct assessments while he or she possesses the assessment books. Failure to take that step does not foreclose further administrative review.

Count I has two gravamina: (1) the lack of statewide assessment uniformity, which results from a "multi-tier assessment pattern," and (2) the constitutional inadequacy of the state administrative and judicial remedies for such assessment disparities. It alleges at great length the specific improprieties on each defendant's part assertedly underpinning those two constitutional violations:

1. County Boards violated the Fourteenth Amendment strictures by (Complaint ¶ I–21):

(a) functioning under an impermissibly broad (and unfettered) delegation of authority;

(b) refusing to establish standards constraining their discretion or to disclose the bases for their decisions;

(c) knowingly perpetuating the multi-tiered patterns of assessments; and

(d) threatening complaining taxpayers with assessment increases.

2. Township Assessors, Townships (which act through the Township Assessors) and Supervisors of Assessments (who instruct the Township Assessors) breached the due process and equal protection mandates of the Fourteenth Amendment by (Complaint ¶ I–22):

(a) knowingly maintaining multi-tiered assessment patterns;

(b) refusing to assess residential property on the basis of its actual market value as determined by appraisal or recent sales;

(c) refusing to assess all property at the lowest fraction of fair market value (the lowest "debasement" fraction) applied to any identifiable class of property in defendants' respective taxing districts; and

(d) refusing to reduce a taxpayer's assessment when presented with undisputed evidence that comparable properties were assessed at lower debasement fractions than was that taxpayer's property.

3. PTAB and its chairman ran afoul of the Fourteenth Amendment by (Complaint ¶ I–23):

(a) arbitrarily imposing on taxpayer appellants disproportionate court reporter and other costs, the magnitude of which was sometimes "comparable" to the taxes at stake;

(b) reassessing the property of those victorious appellants at a debasement fraction "different" from that applied to comparable properties not involved in any PTAB appeal;

(c) raising the assessments of those appellants who complained of non-uniform assessment practices;

(d) refusing to furnish at PTAB hearings (1) tables used by PTAB to establish debasement factors or (2) an evidentiary justification for the use of such tables;

(e) refusing to entertain evidence of non-uniform assessment practices;

(f) refusing to accord costs to successful appellants despite PTAB's statutory power to do so; and

(g) requiring exhaustion of the Board remedy as a precondition to PTAB review of challenged assessment.

4. Justice Ward, all other Illinois judges, the Illinois Attorney General, and all Illinois counties other than Cook County offended the Fourteenth Amendment by:

(a) refusing to provide a plain, speedy and efficient remedy that would eliminate illegal multi-tiered assessment patterns throughout the state;

(b) refusing to award interest on tax refunds;

(c) requiring complaining taxpayers first to seek relief from the Boards;

(d) applying an unpredictable "constructive fraud" standard to taxpayers seeking assessment relief from the Illinois courts;

(e) refusing to make publicly (and readily) available tax refund settlements on assessment complaints; and

(f) refusing to permit direct judicial review of Board actions under any circumstances.

Count I seeks broad declaratory and injunctive relief. That would essentially condemn both the multi-tiered assessment patterns and the specific challenged practices of each defendant.

## Class Certification

Plaintiffs seek certification of the following classes and subclasses under Count I:

1. the class of all Illinois taxpayers, excluding defendants, who own real property outside of Cook County ("plaintiff statewide class");

2. the subclass of taxpayers, excluding defendants, who own real estate in Lake County ("plaintiff Lake County subclass");

3. the subclass of taxpayers, excluding defendants, who own real estate in DuPage County ("plaintiff DuPage County subclass");

4. the class of all Illinois counties, other than Cook County ("defendant County class"), as assertedly represented by DuPage and Lake Counties; and

5. the class of all Illinois judges not sitting in Cook County ("defendant Judge class"), as assertedly represented by Justice Ward.

For analytical convenience, the adversarial relationships between the plaintiff class and subclasses on the one hand and individual defendants and defendant classes on the other will be viewed in the following manner:

1. plaintiff Lake County subclass versus Lake County, its Supervisor of Assessments, its Board and certain members of its Board (collectively "Lake County defendants");

2. plaintiff Lake County subclass versus West Deerfield Township and its Assessor;

3. plaintiff DuPage County subclass versus DuPage County, its Supervisor of Assessments, its Board and certain members of its Board (collectively "DuPage County defendants");

4. plaintiff DuPage County subclass versus Downers Grove Township and its Assessor;

5. plaintiff statewide class versus PTAB, its Chairman and the Attorney General of Illinois;

6. plaintiff statewide class versus defendant County class and defendant Judge class; or alternatively

7. plaintiff DuPage and Lake County subclasses versus defendant Judge class or a defendant Judge subclass consisting of those Illinois judges who may hear cases arising in those two counties.

This opinion will not address the propriety of certifying the plaintiff class and subclasses as to defendants implicated in the second, fourth and fifth class aspects of Count I, because they have not yet had an opportunity to respond to plaintiffs' motion. Before examining the other class aspects of Count I, this opinion must first confront the threshold problem of standing.

## Standing [4]

Whether suing as a named plaintiff or an absent class member, an individual lacks Article III standing to invoke a federal court's jurisdiction unless he or she suffered "some threatened or actual injury resulting from the putatively illegal action" of the defendant. *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). Obviously a large contingent of the plaintiff class and subclasses—all taxpayers assessed at or below the average debasement fraction [5]—have not suffered the requisite injury. Indeed, those class members directly benefit from defendants' claimed misconduct—assessment non-uniformity and inadequate remedies—be-

---

4. As this Court has noted before, "In a major sense the so-called typicality requirement of [Rule 23(a)(3)] and the so-called adequacy of representation requirement of [Rule 23(a)(4)] are facets of the standing question." *Fields v. Village of Skokie*, 502 F.Supp. 456, 460 (N.D.Ill. 1980).

5. That term simply means the ratio of the sum of the assessments of all real estate in the relevant jurisdiction to the sum of the fair market values of the same real estate.

cause their low assessments translate into correspondingly low tax burdens.

Plaintiffs seek to resist this conclusion on a variety of grounds (R. Mem. at 10–11): First, as previously noted, all but the lowest assessed taxpayers are forced to bear a higher proportionate tax burden than those whose property is assessed below them, and have an interest in eliminating at least the lowest tier of assessment. Second, since the distribution of various state revenues is based on local assessments, Ill.Rev.Stat. ch. 122, par. 18–8.9, all taxpayers, even the lowest assessed, may be harmed when defendants' non-uniform assessment practices result in a net overassessment in a particular taxing district within a township. Third, the burden of an unconstitutional, hopelessly difficult and inadequate review system falls on all taxpayers, since all are in need of relief from the nonuniformity and cannot obtain it, and indeed may be deterred from even trying. Fourth, all taxpayers have an interest in seeing that public officials act lawfully and heed the Illinois Constitution's mandate of uniform assessment. Since all taxpayers presently suffer from some aspect of the conduct at issue in this suit, the representative plaintiffs' claims are typical of a class of all taxpayers. [Fifth,] [e]ven if this were not the case, all property taxpayers are undoubtedly potential victims of future constitutional violations. An individual who one year is assessed at a rate in the lowest tier may the next year find himself in the highest tier, without a meaningful remedy to attack the non-uniform assessment system. From year to year, it cannot be foretold who will bear the greatest burdens of the challenged system.

None of those arguments withstands analysis:

1. Underassessed taxpayers' desire to eliminate the lowest assessment tier is irrelevant, for plaintiffs seek assessment *equalization*. And by definition that form of relief would raise the tax bills of those taxpayers.

2. While an overassessed taxing district's share of state revenues may be disproportionately low (vis-a-vis those of other taxing districts within the township), that does not mean underassessed taxpayers in that district are hurt. Just the opposite is likely to be the case: the ratio of their pro rata share of their district's state revenues to their own disproportionately low tax liabilities would probably exceed the average tax benefit/cost ratio in their township or in Illinois.

3. Any inadequate review system benefits underassessed taxpayers by insuring their overassessed counterparts continue to pay disproportionately high taxes, enabling the taxing districts to impose lower tax rates.

4. Plaintiffs' fourth assertion is mere rhetoric. As a basis for litigation it would do violence to all jurisprudential concepts of standing.

5. Any possibility that some underassessed taxpayers will be overassessed in the future justifies their inclusion as *future* class members, but in no way warrants the inclusion of all underassessed taxpayers as *present* members.[6]

**6.** Plaintiffs rely heavily on a general statement in 7A Wright and Miller, *Federal Practice and Procedure* § 1775, at 21 (1972) and echoed in several cases: Not all class members "need . . . be aggrieved by a desire to challenge defendants' conduct in order for some of them to seek relief under Rule 23(b)(2)." *See also Griffin v. Burns,* 570 F.2d 1065, 1073 (1st Cir.1978); *Sturdevant v. Deer,* 73 F.R.D. 375, 378 (E.D.Wis. 1976). But that proposition has been invoked to justify inclusion of only two narrow categories of class members:

1. actual victims of the legal injury complained of, who for some reason do not wish to seek redress for that injury, *see, e.g., Griffin,* 570 F.2d at 1073 (including, in a class of absentee and shut-in voters whose ballots were not counted, those individuals who voted for the winning candidate);

2. potential victims who possess the same characteristics at which defendant's misconduct is directed, *see, e.g., Illinois Migrant Council v. Pilliod,* 540 F.2d 1062, 1072 (7th Cir.1976) (certifying a class of "all persons of Mexican ancestry or of Spanish surname" in a challenge to immigration officials' alleged harassment of such individuals, because the

■ To accommodate Article III constraints and plaintiffs' desire to represent future victims of defendants' misconduct, the plaintiff class and subclasses will be redefined to (1) exclude presently underassessed (or properly assessed) taxpayers and (2) include taxpayers who will be overassessed in the future. This opinion's Rule 23 analysis will therefore focus on the revised versions of the plaintiff class and subclasses.

### Rule 23 Standards

To be certified, a class (whether a plaintiff or a defendant class) must first satisfy the four criteria of Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[7]

In addition the class must fit one of the three categories enumerated in Rule 23(b), in this case Rule 23(b)(2):

> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .

In addressing compliance with those Rule 23 requirements, this section will first focus on the two plaintiff subclasses (both of which are pitted only against named defendants) and then turn to the bilateral class aspects of Count I—plaintiff statewide class versus defendant County and Judge classes.

1. *Plaintiff DuPage and Lake County Subclasses*

*Numerosity*

■ As for Rule 23(a)(1), there is no doubt the number of overassessed taxpayers in each of the counties is large enough to render joinder impracticable, if not impossible. Moreover, the inclusion of future members (who by definition cannot be joined as named plaintiffs) severely compounds joinder problems.[8] *See William S. v. Gill,* 98 F.R.D. 463 at 469, (N.D.Ill.1983).

*Commonality*

■ This prerequisite, which requires no more than one common legal or factual issue,[9] is easily satisfied. Members of each subclass share an abundance of common issues:

> 1. whether assessment disparities exist in each county and whether such non-uniformity violates members' federal and state constitutional rights;
>
> 2. whether unimproved and rural property is systematically assessed at lower levels than improved and urban property and whether such differential

---

presently uninjured class members were "likely to be subjected to the illegal conduct").

Underassessed taxpayers cannot be squeezed into either category. As already explained, those taxpayers have not been harmed by defendants' conduct nor do they currently have the characteristics that would expose them to such misconduct, for their property is classified within one of the assessment tiers (e.g., unimproved property) assertedly favored by defendants.

7. As this Court has done in other opinions (on the "if you can't beat 'em, join 'em" principle), it will employ the inelegant but convenient rhetoric of "numerosity," "commonality," "typicality" and "adequacy of representation."

8. Both Counties dispute numerosity by claiming the two subclasses cannot encompass overassessed taxpayers who have not exhausted their administrative remedies. Though the issue is not decided by this threshold opinion, such exhaustion is not necessarily required, for at least some of plaintiffs' claims would find administrative procedures wholly futile. And in part the Counties' argument implicates the typicality (not the numerosity) requirement and will be considered in that context later in this opinion.

9. *See Edmondson v. Simon,* 86 F.R.D. 375, 380 (N.D.Ill.1980).

treatment offends state and federal constitutional guaranties;

3. whether each County Board (and each County acting through its Board) violated state and federal constitutional provisions by failing to equalize intracounty assessments;

4. whether Illinois' system for reviewing assessments of complaining taxpayers is "a plain, speedy and efficient remedy";[10]

5. whether County Boards apply more stringent standards of assessment to complaining taxpayers than to noncomplaining ones and whether that practice impermissibly chills the taxpayer's exercise of his First Amendment rights;

6. whether County Boards' enabling statute is an excessive delegation of power under the Due Process Clause.

County defendants counter that none of those common issues implicates the counties unless the actions of County Boards, County Supervisors of Assessments or Township Assessors are imputed to those political subdivisions under respondeat superior principles. Imposition of vicarious liability, County defendants observe, is foreclosed by *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). That argument will not be entertained at this juncture, for Rule 12(b)(6) or Rule 56—not Rule 23—provides the appropriate vehicle for its resolution. Plaintiffs' allegations that each County acts through its Board and Supervi-

sor of Assessments must suffice in this context.

*Typicality*

Rule 23(a)(3) is met where the representative plaintiff's "claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members and is based on the same legal theory." *Edmondson,* 86 F.R.D. at 381. Both elements of typicality are present here. Claims of named plaintiffs and absent class members all focus on the same practices of the various County defendants:

1. each County defendant's failure to equalize intracounty assessments;

2. County Boards' assumption of unconstitutionally broad powers and their refusal to promulgate standards or give reasons for their decisions;

3. County Boards' practice of retaliating against complaining taxpayers (including plaintiffs).

Those aspects of County defendants' conduct are also challenged on the same legal basis.

County defendants contend named plaintiffs' exhaustion of administrative remedies renders them atypical of class members who failed to do so in three respects. Unlike those class members, it is said named plaintiffs:

1. cannot assert the *chilling* effect of retaliatory action by County defendants;

2. are invulnerable to any exhaustion defense; and

3. are subject to a collateral estoppel defense based on Board and PTAB deter-

10. Under the Tax Injunction Act of 1937, 28 U.S.C. § 1341, plaintiffs must prove Illinois' refund procedures lack those attributes to establish this Court's subject matter jurisdiction. County defendants claim this jurisdictional barrier is fatal to plaintiffs' class certification notion, reasoning:

   1. this Court must dispose of all jurisdictional issues before certifying a class and
   2. two recent Supreme Court decisions, *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981) and *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), conclusively demonstrate Illinois' assessment remedies are "plain, speedy and efficient."

Their first proposition is seriously flawed. This Court's August 13, 1981 order, to which counsel for County defendants expressly agreed, contemplates that the class certification issues be reached before any other issues. Moreover, Rule 23(c)(1) strongly suggests this Court has the discretion to proceed in that fashion: "*As soon as practicable* after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Finally, County defendants' failure to supply logical or jurisprudential support for their position illustrates its poverty. And if that were not enough, it only takes one reading of *Rosewell* and *McNary* to realize the Counties are flatly wrong on their second proposition as well.

minations upholding their individual assessments.

None of those supposed distinctions defeats typicality.

■ As for the first claimed dissimilarity, named plaintiffs' willingness to pursue administrative remedies in the past does not conclusively establish the absence of any future chilling effect. And even if it did, those plaintiffs whose assessments were raised in retaliation were still injured by County defendants' First Amendment improprieties. And that injury suffices to entitle those plaintiffs to challenge such misconduct under the First Amendment.

■ Both the other asserted dissimilarities deserve short shrift, for Rule 23(a)(3) mandates the typicality of a named plaintiff's claims—not defenses. 1 Newberg, *Class Actions* § 1115e, at 191 (1977) (Rule 23(a)(3)'s disjunctive reference to "claims or defenses" should be construed as "claims of a plaintiff in relation to plaintiff's class, or defenses of a defendant in relation to defendant's class"). Even were that not the case, the typicality of named plaintiffs would remain unimpaired:

1. Concededly, named plaintiffs are not exposed to any defense based on a Section 1983 requirement of exhaustion of administrative (but not judicial [11]) assessment remedies. But they have attacked the constitutionality of a state-imposed exhaustion requirement. That constitutional challenge involves many of the issues that bear on whether an exhaustion requirement should be recognized under Section 1983 (and see n. 8 as well).

2. Availability of a collateral estoppel defense against named plaintiffs is a figment of County defendants' imaginations. Those defendants have not even attempted to identify an administrative or judicial proceeding in which any of the plaintiffs either aired the specific constitution-

al issues raised here or had a fair and adequate opportunity to do so.

For all the reasons discussed in this section, named plaintiffs are typical of their fellow class members.[12]

### Adequacy of Representation

■ Under Rule 23(a)(4) plaintiffs qualify as adequate class representatives so long as (1) their counsel are capable of conducting the litigation and (2) their interests do not clash with those of the class. *See Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir.1977). First, the ability of plaintiffs' counsel to prosecute this action is undisputed. Second, this opinion's exclusion of underassessed (and correctly assessed) taxpayers from the class eliminated the only potential source of antagonism. Rule 23(a)(4) is therefore satisfied.

### Rule 23(b)(2)

Plaintiff subclasses fit neatly into the Rule. All the challenged actions undertaken by each set of County defendants—particularly their efforts to foster multi-tiered assessment patterns—adversely affect all overassessed taxpayers in each County. While only a few class members have actually suffered retaliatory assessment increases by their respective County Boards, such misconduct is premised "on grounds generally applicable to the class." Each plaintiff subclass also satisfies the other requirement of Rule 23(b)(2): If the class allegations are borne out at trial, "final injunctive relief or corresponding declaratory relief with respect to the class as a whole" would be appropriate. Indeed the *only* relief sought is classwide in scope and equitable in nature.

### 2. Defendant Classes

In *Adashunas v. Negley*, 626 F.2d 600, 604–05 (7th Cir.1980) (footnote omitted), our Court of Appeals expressed serious res-

11. Not all named plaintiffs exhausted available state judicial remedies.

12. County defendants' other Rule 23(a)(3) arguments do not deal with the typicality of named plaintiffs' claims but instead attack cer-

tain aspects of Count I on Rule 12(b)(6) grounds. As already noted, such arguments are inappropriate on a class certification motion.

ervations as to the propriety of certifying defendant classes, particularly under Rule 23(b)(2):

> As Professor Moore has pointed out, the language of Fed.R.Civ.P. 23(b)(2) must be "wrenched to fit" the concept of a defendant class if indeed the language can be stretched in that direction at all. 3B *Moore's Federal Practice* ¶ 23.40[6], at 23–310 (2d ed. 1980). "There is certainly a substantial question as to whether this general approach to litigation and inclusion of a defendant class could ever be sanctioned under Rule 23 . . . ." *Mudd v. Busse,* 68 F.R.D. 522, 526 (N.D.Ind.1975). "[T]he very notion of a defendant class raises immediate due process concerns." *Marchwinski v. Oliver Tyrone Corp.,* 81 F.R.D. 487, 489 (W.D.Pa.1979).

Nevertheless, because that is not a square holding on the issue, this opinion will first address questions that can be decided without taking a stance on the basic principle.

### a. Defendant County Class

■ Typicality and adequacy of representation—closely related requirements—thwart certification of the defendant County class. Plaintiffs satisfy neither of the two divergent approaches by which courts apply those concepts to defendant classes (or the corresponding plaintiff classes).

Espousing the more stringent of the two positions, *Le Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 465–66 (9th Cir.1973) concluded Rule 23(a)(3) and (a)(4) generally bar certification of bilateral plaintiff and defendant classes because the named plaintiff and absent class members have causes of action against different defendants (though their injuries were concededly identical). *Le Mar,* 489 F.2d at 466 did recognize two exceptions: where the defendants (1) have acted as co-conspirators or (2) are "juridically related." *Mudd v. Busse,* 68 F.R.D. 522, 527–28 (N.D.Ind.1975) (Eschbach, J.) elaborated on the latter exception (citations omitted):

> The *Le Mar* court did recognize that in certain instances, where all members of the defendant class were connected by a

common "juridical link," a plaintiff class versus a defendant class suit could be appropriate, even though no named plaintiff would have personal claims against most members of the defendant class. Such "juridical links" would most often be found in instances where all members of the defendant class are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of statewide application, which is alleged to be unconstitutional. In such a case an action against the defendant class is simply a procedural alternative to challenging the constitutionality of a statute by suit against the state directly—a procedural device perhaps sometimes required by the legal fictions surrounding the interplay in the case law between the Eleventh Amendment and the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Certainly, the vast majority of the cases cited by the plaintiffs in support of their attempt to pit the plaintiff class against the defendant class in this case fit this legal mold.

Not surprisingly, classes of juridically related defendants will almost always pass muster under Rule 23(a)(3) and (a)(4). After all, the central (if not the only) legal issue posed—the facial validity of the common course of conduct compelled by the "juridical link"—is common to the class. Moreover, such class actions are not plagued by any individualized factual issues, for the juridical link itself establishes (by definition) each defendant class member committed the challenged acts in precisely the same manner.

Other courts employ a more flexible and functional test in determining compliance with Rule 23(a)(3) and (4):

> In sum, where the court can fairly conclude that by pursuing their own interests vigorously the named representatives will *necessarily* raise all claims or defenses common to the class, representativeness will be satisfied.

*United States v. Trucking Employers, Inc.,* 75 F.R.D. 682, 688 (D.D.C.1976) (emphasis in

original). That approach permits facial challenges to similar, but independently inspired, *express* policies or practices of non-juridically related defendants for three reasons:

1. In such cases the common legal issue—the facial legality of the challenged conduct—predominates, *see Thompson v. Board of Education of Romeo Community Schools,* 71 F.R.D. 398, 408 (W.D.Mich. 1976).

2. Vexing individualized factual issues, such as whether each defendant class member engaged in the offensive conduct, are nonexistent, *see Thompson,* 71 F.R.D. at 408 & 409 n. 18 (endorsing denial of defendant class certification in two other cases where individualized proof as to each defendant's adherence to the policy under attack was necessary); *Doss v. Long,* 93 F.R.D. 112, 118 (N.D.Ga. 1981) (absence of "apparent factual issues to be resolved" supports finding of adequacy of representation); *Trucking Employers,* 75 F.R.D. at 689 (certifying a nationwide defendant class of trucking concerns in Title VII challenge to their hiring policies because each member "provides an *identical* service, requires employees who possess *identical* skills, and utilizes *identical* job classifications") (emphasis added).

3. Differences in the manner in which each defendant class member applied or administered the challenged policy are irrelevant, *see Doss,* 93 F.R.D. at 117 (quoting Note, *Defendant Class Actions,* 91 Harv.L.Rev. 630, 643–44 (1978)):

> If the class action simply challenges the facial validity of the law, as opposed to the manner in which it is administered or enforced, there is by definition only one issue at stake perfectly common to all class members.

Defendant County class fails to comport with either formulation of Rule 23(a)(3) and (a)(4). *Le Mar*'s formalistic conception of those prerequisites is fatal to that class, for both the conspiracy and juridical relationship exceptions are unavailing. Plaintiffs contend the counties are juridically related because County Boards derive authority to regulate assessments from the same statute. But that juridical link supports class certification only as to one minor aspect of Count I—the asserted unconstitutionality of that enabling statute. Other aspects of Count I focus on the particular manner in which each county (via its Board and Supervisor of Assessments) exercised its delegated power. As to such discretionary conduct, the counties are certainly not juridically related.[13] And nothing is clearer than *Mudd,* 68 F.R.D. at 528 in holding the requisite juridical link must inhere in the specific conduct at issue, not in some other irrelevant aspect of the class members' relationship. In refusing to certify a defendant class of state judges who allegedly violated the constitution in exercising their bail-setting discretion, *Mudd* reasoned (*id.*):

> [T]his paradigm situation [the juridically related exception] for allowing a plaintiff class versus defendant class suit is not present in the case at bar. It is true that all members of the purported defendant class are judicial officers of the state. However, the class members are not charged with enforcing or adhering to an unconstitutional statute or common law rule. The constitutionality of the state law framework governing the judicial exercise of discretion involved is expressly not in issue. Rather, the defendant class members are charged with various individual policies concerning bail, and various abuses of discretion in setting bail in individual cases. The only common thread is that all such policies and abuses of discretion are alleged to be errors of constitutional magnitude. Under such circumstances a plaintiff class versus defendant class suit is not appropriate. There is no evidence or other showing that the claims of the representative plaintiffs against the representative defendant, which arise out of two specific instances of setting bail, are typical of

---

13. For example, while the counties may have created and maintained like multi-tiered assessment patterns, they nevertheless acted independently of one another.

the claims of most members of the plaintiff class against the members of the defendant class. It is conversely true that there is no showing that the defendant representative has defenses typical of those of the various defendant class members.

Case law adopting the less stringent approach, exemplified by *Trucking Employers,* is also inhospitable to defendant County class. True enough the legal issues posed are essentially common to the class, for Count I mounts a facial assault on the same asserted practices of each County. But because it may be expected the absent counties would deny engaging in such practices (as do their purported representatives), individual fact issues abound:

1. whether and the extent to which systematic assessment disparities exist in each county;

2. whether each County Supervisor of Assessments encourages the local assessors to appraise different categories of property at different debasement fractions;

3. whether each Board attempts to deter assessment challenges by boosting the assessments of complaining taxpayers;

4. whether each Board fails adequately to disclose the reasons for its decisions and to promulgate standards governing its discretion.

In short it is Count I's failure to challenge *express* policies—the existence of which is not controverted—that distinguishes this case from those in which classes of nonjuridically related defendants were certified. The two "representative" Counties simply have no incentive to marshal evidence necessary to prove the nonexistence of those challenged practices in the other counties—a factfinding mission that would divert scarce litigation resources from their own defense. Consequently, this Court cannot "conclude that by pursuing their own interests vigorously the [Counties] will *necessarily* raise all claims or defenses common to the class." *Trucking Employers,* 75 F.R.D. at 688.[14]

### b.   Defendant Judge Class

Unaffected by the problems that afflict defendant County class, the defendant Judge class readily survives Rule 23(a) scru-

---

14. Plaintiffs Mem. 48 n.* concedes that proof the representative Counties engage in improper assessment practices "would not necessarily show that all counties" do so. But they argue that should not preclude class certification, because the County class could later be redefined to exclude any county that proves it did not engage in the offensive practices. Neither of the two cases cited by plaintiffs supports that proposition:

  1. *Doss,* 93 F.R.D. at 117 noted its power to modify the class definition only in response to the fanciful Rule 23(a)(3) assertion that differentiating characteristics among the class members might afford individualized defenses. It did not suggest (as plaintiffs now do) class redefinition as a solution to the wholly different (and nonspeculative) prospect that certain class members did not engage in the allegedly unconstitutional behavior. That is not surprising, for the gravamen of the *Doss* action—the fee system under which the defendant class judges operated—concededly implicated all class members.

  2. *Trucking Employers* involved a Title VII challenge to the hiring practices of numerous trucking companies. In certifying that defendant class, *Trucking Employers* discounted the theoretical possibility that plaintiffs might fail to make a prima facie showing as to the discriminatory impact of certain class members' hiring practices, reasoning such defendants would in effect "be excluded from the class at that time." 75 F.R.D. at 689. But such reasoning is inapposite here for two reasons. First, unlike this case, it was clear that all class members adhered to the same challenged practices. Second, such logic was undoubtedly based on the realization that because the class members' practices were the same, their discriminatory impact would in all likelihood be the same. But that cannot be said as to the allegedly illegal impact of each county's assessment practices—assessment nonuniformity—for plaintiffs do not even allege the congruity of such practices.

It must also be remembered that we deal here with Rule 23(b)(2) certification, which unlike Rule 23(b)(3) does not mandate class notice and an opt-out right (see Rule 23(c)(2)). Plaintiffs' notion poses all sorts of logistics problems, including the prospect of a series of minitrials—defeating the entire concept of Rule 23(b)(2)'s reference to "the class as a whole."

tiny. Little discussion of the criteria is needed.

As for Rule 23(a)(1), this Court takes judicial notice that well over 200 Illinois Circuit, Appellate and Supreme Court Judges sit in counties other than Cook County. That number is sufficiently large to render joinder impracticable.

Commonality under Rule 23(a)(2) is certainly met, for Count I challenges well-settled common law doctrines to which each defendant Judge class member adheres (or is bound to adhere):

  1. exhaustion of administrative remedies requirement;
  2. adequacy of legal remedy; and
  3. constructive fraud.

As for Rule 23(a)(3) and (a)(4), the Judge class even satisfies the more restrictive version of those prerequisites: Each judge's application of the challenged common law precepts is juridically linked by the bond of stare decisis. In contrast to members of the County class, no defendant Judge can disclaim his or her adherence to the policies attacked by plaintiffs. Thus the Judge class is devoid of any individualized claims or defenses or any potential for antagonism.[15]

It therefore becomes necessary to confront head-on the issue as to which *Adashunas,* 626 F.2d at 605 expressed concern: whether Rule 23(b)(2) will be "wrenched to fit" the concept of defendant classes. If Rule 23(b)(2) is read literally, the "party opposing the class" could only be a defend-

ant, for only a defendant can fairly be said to have "acted or refused to act on grounds *generally applicable* to [a] class" and only a defendant's conduct can "mak[e] appropriate final injunctive relief . . . with respect to [a] class as a whole."

This Court must acknowledge that the great majority of cases to have considered the problem have "opted in" for the concept of defendant classes in the Rule 23(b)(2) context. But what those cases have typically done is to decide that such classes have utility (an unexceptionable proposition with which this Court agrees), then to bend Rule 23(b)(2) out of shape to produce that result.[16] Other cases alternatively eschew the linguistic sleight of hand and simply endorse and accept the policy considerations to reach the same result.[17]

In this Court's view neither such approach is legitimate. "Judicial activism" is a much mooted concept these days. Some swear at it; others swear by it.[18] But if that adjective-noun combination may ever legitimately carry pejorative connotations, it must be in situations where the responsible parties—the constitutional framers, the Congress or (as in this case) the draftsmen of the Rules—have created a limited provision and the judiciary has deliberately removed the limitation simply because the general idea is considered a good candidate for expansion.

In short Rule 23(b)(2) is not simply a provision that permits "final injunctive relief . . . with respect to the class as a

---

**15.** Justice Ward unconvincingly relies on *Mudd* to establish the inadequacy of his representation. *Mudd* rejected on Rule 23(a)(4) grounds the representative of a defendant judge class because Indiana's Attorney General had refused to defend the named judge. There were no assurances as to the judge's ability or willingness "to bear the financial burden required to adequately litigate a complex class action lawsuit." But Justice Ward is being represented by the Attorney General of Illinois. And even were he forced to secure private counsel, it is not at all clear his representational capacity would suffer. Because his defense is perfectly coextensive with that of the absent Judges, vigorous advocacy on his own behalf will equally vindicate the interests of the entire class.

**16.** *See, e.g., Kidd v. Schmidt,* 399 F.Supp. 301, 303–04 (E.D.Wis.1975); *Research Corp. v. Pfister Associated Growers, Inc.,* 301 F.Supp. 497, 500 (N.D.Ill.1969).

**17.** *See e.g., Marcera v. Chinlund,* 595 F.2d 1231, 1238 (2d Cir.1979); *Doss,* 93 F.R.D. at 119; *Hopson v. Schilling,* 418 F.Supp. 1223, 1237 (N.D.Ind.1976); *Redhail v. Zablocki,* 418 F.Supp. 1061, 1066 (E.D.Wis.1976), *aff'd sub nom. Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978).

**18.** *See, e.g.,* Swygert, *In Defense of Judicial Activism,* 16 Val.U.L.Rev. 439 (1982).

whole" whenever it seems "appropriate." Instead it requires a causal nexus, expressed by its use of the connective term "thereby": Injunctive relief is "appropriate" *only* when "the party opposing the class has acted or refused to act on grounds generally applicable to the class...." That does not fairly describe plaintiffs in this case—"the parties opposing the class" —of defendant Judges. This Court agrees with the doubts voiced by our Court of Appeals in *Adashunas,* by Judge Eschbach in *Mudd,* by the Fourth Circuit in *Paxman v. Campbell,* 612 F.2d 848, 854 (4th Cir. 1980), by 3B Moore's ¶ 23.40[b], at 23–310 and by 7A Wright and Miller § 1775, at 11–12 (1982 supp.). It denies certification of the defendant Judge class.

### Conclusion

Plaintiffs' motion for class certification is granted only in the following respects as to Count I:

1.  plaintiff Lake County subclass (as redefined in the "Standing" section of this opinion) versus Lake County, its Supervisor of Assessments, its Board and the named members of its Board; and

2.  plaintiff DuPage County subclass (as similarly redefined) versus DuPage County, its Supervisor of Assessments, its Board and the named members of its Board.

Plaintiffs' current motion for class certification is denied in all other respects.

### SUPPLEMENTAL OPINION

Two Lake County and seven DuPage County taxpayers have brought this class action, principally under 42 U.S.C. § 1983 ("Section 1983"), against officials and governmental bodies involved in the real estate tax assessment systems of all Illinois counties other than Cook. Count I of plaintiffs'

1.  When the Opinion was announced in open court, counsel for the parties agreed this Court should deal with the Downers Grove Township-DuPage County class certification questions (though not yet briefed) as well as those implicating West Deerfield Township and Lake County, because identical principles are involved. Both for convenience and because the factual matters affecting the former situation

Second Amended and Supplemental Complaint (the "Complaint") attacks those systems as violative of the Illinois Constitution and the federal constitutional guaranties of due process and equal protection.

Plaintiffs have moved pursuant to Fed.R. Civ.P. ("Rule") 23(c)(1) to certify various classes and subclasses under Count I. This Court's July 5, 1983 memorandum opinion and order (the "Opinion") disposed of all but three aspects of that class certification motion. This opinion will deal with two of those three remaining aspects:

1.  certification of a subclass of taxpayers (excluding defendants) who own real estate in Lake County (the "Lake County subclass") as to Count I claims against West Deerfield Township and its Assessor (collectively "West Deerfield defendants"); and

2.  certification of a subclass of taxpayers (excluding defendants) who own real estate in DuPage County (the "DuPage County subclass") as to Count I claims against Downers Grove Township and its Assessor (collectively "Downers Grove defendants").[1]

For the reasons stated in this memorandum opinion and order, certification is denied as to the Lake County and DuPage County subclasses but is granted as to the more narrowly drawn subclasses of overassessed taxpayers who own real estate in West Deerfield and Downers Grove Townships.

### Count I

It is of course unnecessary to repeat the Opinion's extensive discussion of assessment procedures and Count I's claims as to non-West Deerfield and non-Downers Grove defendants. For present purposes a summary of the charges against the West Deerfield and Downers Grove defendants will suffice:

have not been fully presented to this Court, the discussion in this opinion will be limited to the West Deerfield-Lake County facts. If upon reviewing this opinion counsel find any difference in result is indicated because of factual dissimilarities not previously called to this Court's attention, a motion to reconsider will be in order.

Complaint ¶ I–22 asserts those defendants breached the due process and equal protection mandates of the Fourteenth Amendment by:

1. knowingly maintaining multi-tiered assessment patterns;

2. refusing to assess residential property on the basis of its actual market value as determined by appraisal or recent sales;

3. refusing to assess all property at the lowest fraction of fair market value (the lowest "debasement" fraction) applied to any identifiable class of property in defendants' respective taxing districts; and

4. refusing to reduce a taxpayer's assessment when presented with undisputed evidence that comparable properties were assessed at lower debasement fractions than was that taxpayer's property.

### Class Certification [2]

#### Standing

Before addressing the class certification issues, this opinion must first examine the threshold problem of standing, a concept integrally related to the so-called requirements of typicality [3] and adequacy of representation (under Rule 23(a)(3) and (a)(4), respectively). See *Fields v. Village of Skokie,* 502 F.Supp. 456, 460 (N.D.Ill.1980). As Opinion at 643 emphasized:

Whether suing as a named plaintiff or an absent class member, an individual lacks Article III standing to invoke a federal court's jurisdiction unless he or she suffered "some threatened or actual injury resulting from the putatively illegal action" of the defendant. *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973).

■ As against the West Deerfield defendants, the proposed Lake County subclass includes two types of individuals who have not suffered the requisite injury: (1) taxpayers assessed at or below the average debasement fraction and (2) taxpayers who do not own real estate in West Deerfield Township. Consistently with Opinion at 643–44 & n. 6, the first category of taxpayers will be excluded from the class. As for the second taxpayer group, they cannot possibly be affected by the challenged practices of the West Deerfield defendants, who by definition lack the power to determine or revise the property assessments of residents in other Lake County townships. And their exposure to similar practices by their own Township Assessors certainly does not establish the causal nexus between their injuries and the alleged misconduct of West Deerfield defendants.[4]

■ As in Opinion at 645, the Lake County subclass that can proceed against the West Deerfield defendants will be revised to (1) exclude (a) taxpayers who are presently underassessed (or properly assessed) and (b) taxpayers who do not own real estate in West Deerfield Township and (2) include taxpayers who (a) own real estate in West Deerfield Township and (b) will be overassessed in the future.[5] This

---

2. To avoid redundancy, this opinion will generally not mention arguments considered and rejected by the Opinion.

3. As this Court did in Opinion at 645 n. 7, it will employ the inelegant but convenient terms "numerosity," "commonality," "typicality" and "adequacy of representation" to describe the Rule 23(a) criteria.

4. For the reasons stated in Opinion at 648–50, this Court will not certify a bilateral class action between the Lake County subclass and a defendant class of Lake County townships and assessors, as represented by the West Deerfield defendants.

5. West Deerfield defendants also seek exclusion of taxpayers whose assessments exceed the median level by less than 10%. They rely on a statement in Complaint Ex. F (a document published by the Illinois League of Women Voters) that assessments less than 10% above or below the median are considered "according to state standards . . . . [to be within] an acceptable level of uniformity." Even were that statement an admission by plaintiffs (a questionable proposition), it does not disqualify those taxpayers from class membership:

1. In this case the tolerable degree of assessment dispersion is a federal (as well as state) constitutional question. Hence it is not governed by state statutes (or their interpretation by the League of Women Voters).

modified version of the subclass will be referred to as "West Deerfield subclass." [6]

## Rule 23 Standards

■ To be certified a class must first satisfy the four criteria of Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition the class must fit one of the three categories enumerated in Rule 23(b), in this case Rule 23(b)(2):

> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .

### Numerosity

Unquestionably the number of overassessed taxpayers in West Deerfield Township is large enough to render joinder impracticable. Accordingly to Complaint Ex. B, at least 137 of the 548 West Deerfield properties examined were assessed at more than 10% above the median. Were that sample representative of all West Deerfield real estate, joinder of all class members would be *impossible* (indeed even 137 class members would satisfy numerosity requirements). Finally, as Opinion at 645 pointed out, "inclusion of future members (who by definition cannot be joined as named plaintiffs) severely compounds joinder problems."

---

2. Any arguable constitutional permissibility of 10% overassessments goes to the merits of certain individual members' claims, not to the standing requirement of injury in fact.

### Commonality

Virtually all issues raised by the Count I claims against the West Deerfield defendants are common to the class. Those issues include:

1. whether defendants knowingly maintained multi-tiered assessments, and whether such conduct offends class members' federal and state constitutional rights and

2. whether defendants refuse to assess all property at the lowest fraction of fair market value applied to any identifiable class of property in West Deerfield Township, and whether that refusal is constitutionally permissible.

Thus the Rule 23(a)(2) requirement of at least one common issue is easily satisfied here.

### Typicality

Rule 23(a)(3) is also met, for the claim of each representative plaintiff (Paul and June Hamer) "arises from the same event or practice or course of conduct that gives rise to the claims of the class members and is based on the same legal theory." *Edmondson v. Simon*, 86 F.R.D. 375, 381 (N.D.Ill. 1980), recently cited with approval on this point in *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225 at 232 (7th Cir. 1983). Indeed, the only potentially atypical aspects of the representative plaintiffs' claims vanished when the plaintiff subclass was more narrowly sculpted.

### Adequacy of Representation

Paul and June Hamer qualify as adequate class representatives because "(1) their counsel are capable of conducting the litigation and (2) their interests do not clash with those of the class." Opinion at 647. Focusing only on the latter aspect of adequacy, the West Deerfield defendants contend the Hamers and absent class members have antagonistic interests because a "major focus of the litigation will be on [two]

---

6. By parity of reasoning, a comparable "Downers Grove subclass" will supplant the proposed DuPage County subclass against the Downers Grove defendants.

arguable defense[s] unique to the named plaintiffs" [Pl. Mem. 20]:

> 1. Collateral estoppel and res judicata principles bar the Hamers from asserting any issues that were or could have been raised during their prior administrative and state court challenges to their assessments.
>
> 2. *Axelrod v. Earhart*, 565 F.Supp. 549 (N.D.Ill.1983) generated a recent settlement between the same West Deerfield defendants and a class of all West Deerfield taxpayers, including the Hamers. That settlement forecloses the Hamers from pressing any further claims against those defendants.

Even assuming the dubious premise of defendants' argument—that *"much* of the [Hamers'] effort would ... necessarily [be] devoted to their own [defenses]," *Koos v. First National Bank of Peoria,* 496 F.2d 1162, 1165 (7th Cir.1974) (emphasis added)— neither "arguable" defense impairs the Hamers' representational capacity. As for the first putative defense, at least on the present state of the record Opinion at 647 has already indicated no such concern is posed. As for the second "defense," two points should be noted.

> 1. That defense is common to the entire West Deerfield subclass.
>
> 2. As page 23 of this Court's May 18, 1983 *Earhart* opinion suggests, that settlement may well be abrogated for lack of subject matter jurisdiction.

## *Rule 23(b)(2)*

As modified, the West Deerfield subclass fits snugly into this compartment of Rule 23(b). All four challenged actions undertaken by the West Deerfield defendants adversely affect all overassessed taxpayers in that township. Admittedly, only some of those members may have been directly subjected to one of those practices—defendants' refusal to reduce a taxpayer's assessment when presented with undisputed evidence that comparable properties were assessed at lower debasement fractions. Nevertheless, that allegation is still eligible for Rule 23(b)(2) treatment because the conduct at issue is premised "on grounds generally applicable to the class." And if the class allegations are borne out at trial, "final injunctive or corresponding declaratory relief with respect to the class as a whole" would be appropriate. In fact the only relief sought against the West Deerfield defendants in Count I is a declaration as to the illegality of the four practices in question.[7]

### *Conclusion*

Count I's allegations against West Deerfield defendants can be litigated on behalf of the class of all overassessed taxpayers who own or may hereafter own real estate in West Deerfield Township. By the same token, Count I's allegations against Downers Grove defendants can be litigated on behalf of the class of all overassessed taxpayers who own or may hereafter own real estate in Downers Grove Township.

---

**7.** Defendants contend such declaratory relief is sought solely as a predicate for obtaining money damages in later suits by individual class members. They cite *Sarafin v. Sears, Roebuck & Co., Inc.,* 446 F.Supp. 611 (N.D.Ill.1978) as authority for denying Rule 23(b)(2) certification in those circumstances. That argument rests on a flawed premise. Because defendants continue to adhere to the challenged practices, a declaration of illegality would "perform the same function as an injunction" (*id.* at 615), unlike the situation in *Sarafin* where (1) the defendant had already discontinued the allegedly unlawful acts (before the suit was even brought) and (2) there was little likelihood of future resumption of such conduct. And the incidental possibility that the declaratory judgment would also lay the basis for a later damage award does not defeat Rule 23(b)(2) certification, for the predominant thrust of Count I's prayer for relief against the West Deerfield defendants is prospective.